James R. LASKY and Irene J. Lasky, Plaintiffs-Appellants,†

v.

CITY OF STEVENS POINT and Sentry Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 97–2728. Submitted on briefs March 9, 1998.—Decided April 16, 1998.*

(Also reported in 582 N.W.2d 64.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William D. Mansell* of *Jerome A. Maeder, S.C.* of Wausau.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Steven M. Anderson, Esq.* of *Ruder, Ware & Michler* of Wausau.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

VERGERONT, J. James and Irene Lasky appeal a summary judgment dismissing their personal injury claim against the City of Stevens Point and its insurer, Sentry Insurance Company, on the ground that the City is immune from suit under § 895.52, STATS., the recreational immunity statute. This claim arose out of injuries that James Lasky suffered when he fell on a wooden bridge in Pfiffner Park in the City of Stevens Point. The Laskys argue that the City is not immune under § 895.52 because James Lasky was not engaged in recreational activities when he fell on the bridge and because the City had a duty to maintain the bridge. We conclude that the trial court correctly held that the City is immune from suit. We therefore affirm.

3

Both parties acknowledge that the relevant facts are not in dispute. On August 17, 1995, while walking on a wooden bridge in Pfiffner Park in the City of Stevens Point, Lasky fell and was injured after a board cracked under him. The bridge, which spans Moss Creek, is part of the Green Circle Trail, a twenty-four mile cycling and hiking trail which passes through the communities of Stevens Point, Plover, Whiting and the Town of Hull. The Green Circle Trail consists of a combination of city streets, sidewalks, paths and trails. The portion on which Lasky was walking when he fell travels through Bukolt and Pfiffner Parks and is known as the Riverfront Trail. It is closed to all motor vehicles except park vehicles and is used by pedestrians, skaters and bicyclists. The Stevens Point Park and Recreation Department maintains this portion of the trail. That maintenance does not include snow removal, since this portion of the trail is not kept open during the winter.

According to Lasky's deposition, on the day of his fall, he parked his car at Bukolt Park and was walking on the Riverfront Trail in order to go to the bakery and to the barbershop, which are located in the downtown area of Stevens Point. He could have driven to the bakery and barbershop, but he parked his car at the park because he wanted to get some exercise while doing his errands. He intended to take the Riverfront Trail until it hooked up with the sidewalk, which went east toward downtown. He had walked about three-quarters of a mile before he fell on the bridge. It is necessary to cross the bridge in order to leave Pfiffner Park when walking on the Riverfront Trail from Bukolt Park.

In their complaint, the Laskys alleged that the City negligently maintained the bridge and failed to

4

warn of the bridge's condition. The City moved for summary judgment against the Laskys and the trial court granted the motion. The court concluded that Lasky was engaged in a recreational activity and that the Riverfront Trail had been withdrawn from transportation uses and was devoted to recreational purposes. The court therefore decided that the City was immune and granted summary judgment in its favor.

Summary judgment allows controversies to be settled without trial where there are no disputed material facts and only legal issues are presented. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App.1983). When reviewing a grant of summary judgment, we employ the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). If there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court order granting summary judgment. *Id.* In this case, since there are no factual disputes, the sole issue is whether the City is immune from liability under § 895.52, STATS. The interpretation and application of a statute is a question of law, which we review independently of the trial court's decision. *Simanek v. Miehle-Goss-Dexter*, 113 Wis. 2d 1, 4, 334 N.W.2d 910, 911 (Ct. App.1983).

Section 895.52, STATS., provides in relevant part that no owner, including a governmental body, is liable for any injury to a person allowed to engage in a recreational activity on the owner's property. *Kostroski v. County of Marathon*, 158 Wis. 2d 201, 203, 462 N.W.2d 542, 543 (Ct. App.1990). Section 895.52(1)(g) defines recreational activity as:

5

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

The Laskys contend that James Lasky was not engaged in a recreational activity when he walked on the Riverfront Trail on his way to the bakery and to the barbershop. They argue that the mere act of walking in a park does not mean that a person is engaged in a recreational activity, citing *Hupf v. City of Appleton,* 165 Wis. 2d 215, 220, 477 N.W.2d 69, 71 (Ct. App. 1991). They also contend that walking through the park is not a recreational activity because it is not one of the twenty-eight activities listed in § 895.52(1)(g), STATS., and is not "any other outdoor sport, game or educational activity." They rely on *Sievert v. American Family Mutual Insurance Company,* 190 Wis. 2d 623, 528 N.W.2d 413 (1995), for this argument.

In *Hupf,* we reversed a trial court's grant of summary judgment to the city. Hupf was injured by a softball while walking between baseball diamonds in a park, and he was in the park because of a recreational

6

softball league set up by the city for which he paid a fee to participate. *Hupf*, 165 Wis. 2d at 220, 477 N.W.2d at 71. We disagreed with the trial court's ruling that the mere act of walking in the park was dispositive of whether a person was engaged in recreational activity. We also stated:

> *Although a walk in the park for the purpose of exercise, relaxation or pleasure is an activity for which the owner is immune*, the legislature did not intend to create a corridor of immunity from the ball field to the parking lot when the walk is inextricably connected to a non-immune activity. Section 895.52(1)(g), STATS., excepts from its definition of recreational activities "any organized team sport activity sponsored by the owner . . . ." Hupf was not participating in an organized team sport at the moment of his injury. If, however, as his argument presupposes, he were traveling directly from this excepted activity by the only available avenue for the purpose of exiting the premises, the exception to immunity endures. (Emphasis added.)

*Hupf*, 165 Wis. 2d at 221, 477 N.W.2d at 72. Although we decided that summary judgment in the city's favor was in error, we also decided that we could not grant summary judgment to Hupf because it was disputed that he was traveling directly from a non-immune activity (organized team sport) by the only available avenue to exit the park. *Id.*

We agree that, following *Hupf*, the act of walking in a park, in itself, does not mean that Lasky was engaged in recreational activity. This case, however, is unlike *Hupf* because there is no statutorily excepted activity involved and, more importantly, Lasky testified he was walking in the park because he wanted to get some exercise while running his errands. He did

7

not testify that he was walking in the park because it was the only way to get to the bakery and barbershop. He could have driven to the bakery or the barbershop but, because he wanted to exercise, he parked his car and began walking the Riverfront Trail to get to downtown. *Hupf* therefore does not support Lasky's position.

In *Sievert*, the activity at issue was walking uninvited onto a neighbor's dock to greet the neighbor, who was in a boat not far from the dock. *Sievert*, 190 Wis. 2d at 626, 528 N.W.2d at 415. The supreme court upheld the two lower courts' determinations that the activity was not recreational. *Id.* at 633, 528 N.W.2d at 417. The court first considered the broad definition at the beginning of § 895.52(1)(g), STATS.—"any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure." The court concluded that the activity, walking onto the dock to greet someone, could be construed as an outdoor activity undertaken for pleasure or relaxation. *Id.* at 629, 528 N.W.2d at 415. However, the court noted that this broad initial definition had to be construed in light of the statute's specifically enumerated activities as well as the second broad definition—"any other outdoor sport, game or educational activity." Otherwise, the court observed, nearly every activity undertaken outdoors would come within the statute. *Id.*

After noting that walking to greet a neighbor was not one of the twenty-eight listed activities nor was it within the second broad definition, the court concluded that it was therefore not within the first, most general definition of recreational activity. *Sievert*, 190 Wis. 2d at 629, 528 N.W.2d at 415. However, the court noted: "The fact that Sievert's activity is not enumerated as a recreational activity, nor falls under either of the general broad definitions of a recreational activity in sec.

895.52(1)(g) when read within the entire context of that subsection, is not determinative of whether walking to greet a neighbor is a recreational activity under the statute." *Id.* at 629–30, 528 N.W.2d at 415. Referring to the declaration of legislative intent, the court observed that the legislature had expressly declared that para. (1)(g) was intended merely to provide examples and, "where substantially similar circumstances or activities exist," the legislation should be construed liberally to protect the property owner. *Id.* at 630, 528 N.W.2d at 415–16. The declaration of legislative intent provides:

> Sec.1. Legislative intent. The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.

1983 Wis. Act 418, § 1.

The *Sievert* court then examined whether the activity at issue was "substantially similar" to the circumstances of a recreational activity. This entails an examination of all aspects of the activity, including the injured person's subjective assessment of the activity, and the intrinsic nature, purpose and consequence of the activity. *Sievert*, 190 Wis. 2d at 631, 528 N.W.2d at 416. Whether the person intended to engage in recreational activities is not dispositive, but why the person is

9

on the property is pertinent. *Id.* The court concluded that considering the nature and purpose of Sievert's activity, he was not engaged in a recreational activity: his objective behavior and his testimony showed that the sole reason for being on the dock was to greet his neighbor. While the court recognized that "an activity can be both recreational under the statute and social," it concluded that Sievert's activity of walking to greet a neighbor was not a recreational activity. *Id.* at 633, 528 N.W.2d at 417.

*Sievert* does not support the conclusion that Lasky was not engaged in a recreational activity. Lasky acknowledged that he was walking in the park to exercise, whereas in *Sievert* the sole purpose of walking on to the dock was to greet a neighbor, not a recreational purpose. The fact that Lasky had a purpose for his walk besides exercise—doing errands—does not, as the court in *Sievert* made clear, mean that Lasky's walking cannot be a recreational activity.

Following the method of analysis established in *Sievert*, we conclude that Lasky was engaged in a recreational activity. Walking for exercise through a park on the way to do errands is included in the initial broad definition of "[an] outdoor activity for the purpose of exercise. . . ." Assuming for purposes of argument that Lasky's walking is not "hiking," one of the enumerated twenty-eight activities, and is not included in the second broad definition, "any other outdoor sport," we consider whether it is substantially similar to the activities enumerated.

Lasky was walking through the park in order to get exercise, a recreational purpose and a recreational setting. Although the characteristic of the property is not dispositive, *Sievert*, 190 Wis. 2d at 632, 528 N.W.2d

at 416, it is one aspect of Lasky's activity. *See Linville v. City of Janesville*, 184 Wis. 2d 705, 717, 516 N.W.2d 427, 430 (1994). Since Lasky's ultimate destinations were business establishments, there was no reason for him to park his car at Bukolt Park and walk on the Riverfront Trail except for exercise, and he testified that the reason he parked there and took the trail was for exercise. We conclude that Lasky's walking on the trail in the park is an activity that is substantially similar to the other listed activities and is therefore a recreational activity.

█

The Laskys argue that even if Lasky were engaged in a recreational activity, the City is not immune because it has a duty to maintain the bridge. Section 81.15, STATS., imposes liability on a municipality for injuries that occur on its public highways and sidewalks due to the insufficiency or want of repairs by the municipality. In *Bystery v. Village of Sauk City*, 146 Wis. 2d 247, 251–52, 430 N.W.2d 611, 613 (Ct. App.1988), we reconciled the conflict between §§ 81.15 and 895.52, STATS., holding that a municipality is immune from liability under § 895.52 for the lack of repair of a highway or public sidewalk only when the municipality has withdrawn the highway or sidewalk from transportation uses, in whole or in part; has devoted it to recreational activities; and the claimed activity is a recreational activity.

In *Bystery*, the plaintiff was injured while riding a bicycle on a city sidewalk. We rejected her claim that the test should turn on the subjective intent of the individual. *Bystery*, 146 Wis. 2d at 254, 430 N.W.2d at 614. Since there was no claim in *Bystery* that the sidewalk was withdrawn in whole or in part from transportation purposes, we did not address that

11

requirement in much detail. However, that requirement was based on our reading of the purpose of § 895.52, STATS., which is to encourage landowners to make their land available for recreational purposes, and, we observed, municipalities were included within the protection of § 895.52. *Id.* at 252, 430 N.W.2d at 613.

The wooden bridge where Lasky fell spans Moss Creek on the Riverfront Trail. The Riverfront Trail is closed to all motor vehicles except park vehicles and is used by pedestrians, skaters and bicyclists. It is maintained by the Stevens Point Park and Recreation Department and is not kept open during the winter. Since we are to consider under *Bystery* whether the highway or sidewalk has been withdrawn for transportation purposes "in whole or in part," we consider the Riverfront Trail and not the entire Green Circle Trail, which of portions incorporate municipal sidewalks. We conclude that the Riverfront Trail is withdrawn from transportation uses and is devoted to recreational activities. The City is therefore entitled to immunity under *Bystery*.

This conclusion is consistent with *Kostroski*, on which the Laskys rely. In *Kostroski*, we applied *Bystery* to a fact situation in which an individual fell through a loose board on a portable wooden sidewalk in a park, while walking from a picnic area to a ball diamond within the park. We concluded that the sidewalk was sufficiently withdrawn from transportation uses and devoted to recreational uses to meet the *Bystery* test. *Kostroski*, 158 Wis. 2d at 204, 462 N.W.2d at 543. We did observe that the location of the wooden sidewalk in the park was not dispositive; the dispositive feature of the sidewalk was its solitary purpose to "serve only

those attempting to enter or leave the ballpark otherwise surrounded and enclosed by the race track." *Id.* at 204–05, 462 N.W.2d at 543–44. We noted that if the "sidewalk was available for general transportation by the public, the mere fact that the injured user was engaged in recreational activity within the park would not provide immunity." *Id.* The Riverfront Trail is not kept open in the winter. It is therefore unavailable for general transportation, and has been devoted instead by the City to recreational purposes.

*By the Court.*—Judgment affirmed.