Brenna Kautz, a minor, by her parents and guardians, Andrew Kautz and Molly Kautz, Andrew Kautz, and Molly Kautz, Plaintiffs-Appellants,

v.

Ozaukee County Agricultural Society, Defendant-Respondent,

Ozaukee County, Aegis Security Insurance Company, ABC Farm Equipment Company, and American Family Mutual Insurance Company, Defendants.

Court of Appeals

*No. 03–3281. Submitted on briefs August 30, 2004.—Decided September 29, 2004.*

2004 WI App 203

(Also reported in 688 N.W.2d 771.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Michael J. Hanrahan* of *Fox, O'Neill & Shannon, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James S. Smith* of *Steinhafel, Smith & Rowen, S.C.*, Brookfield.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J.   Brenna Kautz and her parents Molly and Andrew Kautz appeal a summary judgment dismissing her personal injury claim against the Ozaukee County Agricultural Society on the ground that the Agricultural Society was entitled to recreational immunity pursuant to Wis. Stat. § 895.52 (2001–02),[1] the recreational immunity statute. The Kautzes' claims arose out of injuries Brenna sustained as a result of an E. coli infection she allegedly caught when she climbed on farm equipment displays at the

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

Ozaukee County Fair and came into contact with animal waste that was not disposed of properly. The Kautzes argue that that the Agricultural Society is not immune under § 895.52 because Brenna's injury was caused by the farm equipment and not the Agricultural Society's "property," as that term is used in the statute. The Kautzes further claim that there is an issue of material fact as to whether she and her father attended the fair for the purpose of "engaging in recreational activity."

¶ 2. We conclude that the injuring mechanism was not the farm equipment, but rather the failure to properly handle animal waste and therefore Brenna's injury did stem from her use of the Agricultural Society's property. We also hold that because one of the reasons Brenna and her father attended the fair was for Brenna to have fun and enjoy the fair, they were "engaged in a recreational activity" for purposes of the statute. Accordingly, we affirm the circuit court's application of Wis. Stat. § 895.52 to the Kautzes' claim.

## FACTS

¶ 3. The facts are brief and undisputed. On August 4, 2001, Brenna and her father, Andrew, attended the Ozaukee County Fair, which is organized and operated annually by the Agricultural Society. Brenna was two years old at the time. Andrew was employed as a technical writer for Simplicity Manufacturing, a manufacturer of lawn and garden equipment. According to Andrew, he went to the fair for three reasons: (1) to view the small tractors on display, (2) to take Brenna to the fair to have fun and (3) to see if anyone was showing honey. However, the activities he and Brenna participated in were governed by what held Brenna's attention.

836

¶ 4. While they were walking around the fair, Andrew carried Brenna in a backpack. After briefly visiting the horse show and staging area and the cow building, Andrew carried Brenna over to the lawn tractor display area. Andrew removed Brenna from the backpack, and she was able to climb around the tractors. While Brenna played on the tractors, Andrew began speaking with a Simplicity coworker who happened to be walking past the lawn tractor display area. Andrew made observations about the lawn tractors of Simplicity's competitors.

¶ 5. After walking to a different area of the fairgrounds, Andrew purchased Brenna a scoop of ice cream and they sat down at a picnic table. Prior to eating the ice cream, Andrew wiped Brenna's hands with a diaper wipe. Andrew and Brenna proceeded to several different areas of the fairgrounds during the remainder of their visit, returning twice more to the lawn tractor area so Brenna could climb on the tractors. Andrew and Brenna also stopped three times at the wooden playhouse area where Brenna played in two of the playhouses. The two spent a total of approximately one and one-half hours at the fair.

¶ 6. Shortly after attending the fair, Brenna became severely ill with an E. coli infection and was hospitalized. Brenna, by her parents, filed a complaint against the Agricultural Society and Ozaukee County seeking recovery for injuries Brenna sustained as a result of the infection. In the complaint, the Kautzes alleged that the Agricultural Society and the County were negligent in failing to properly dispose of animal waste at the fairgrounds. The Kautzes claimed that due to the Agricultural Society's and the County's negligence, contaminated runoff from animal wash areas was stepped in by fair attendees and tracked onto the

farm equipment displays. The Kautzes alleged that Brenna came into contact with the E. coli bacteria while she was climbing on the lawn tractors displayed at the fair.

¶ 7.   Thereafter, the Agricultural Society and the County filed motions for summary judgment, arguing that they were immune from liability under the recreational immunity statute, Wis. Stat. § 895.52. The court granted summary judgment in favor of both the Agricultural Society and the County. The Kautzes appeal only from the dismissal of their claim against the Agricultural Society.

## STANDARD OF REVIEW

¶ 8.   We review summary judgment decisions de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. It is sufficient to say that summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms*, 136 Wis. 2d at 315. Additionally, we note that whether an entity is immune from liability under the recreational immunity statute involves the application of a statute to undisputed facts and thus is a question of law we review de novo. *See Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 170 Wis. 2d 77, 83–84, 487 N.W.2d 77 (Ct. App. 1992).

## DISCUSSION

¶ 9. WISCONSIN STAT. § 895.52 provides that no owner is liable for any injury to a person allowed to engage in a recreational activity on the owner's property. *Schultz v. Grinnell Mut. Reinsurance Co.*, 229 Wis. 2d 513, 517, 600 N.W.2d 243 (Ct. App. 1999). The policy behind the statute is to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence. *Doane v. Helenville Mut. Ins. Co.*, 216 Wis. 2d 345, 350, 575 N.W.2d 734 (Ct. App. 1998) (citing *Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994)); *Silingo v. Village of Mukwonago*, 156 Wis. 2d 536, 544, 458 N.W.2d 379 (Ct. App. 1990); Stuart J. Ford, Comment, *Wisconsin's Recreational Use Statute: Towards Sharpening the Picture at the Edges,* 1991 WIS. L. REV. 491, 491. In order to achieve the goal of encouraging property owners to open their lands to public recreation by limiting the liability of property owners, courts must liberally construe the statute in favor of property owners. *See Miller ex rel. Fehring v. Wausau Underwriters Ins. Co.*, 2003 WI App 58, ¶ 11, 260 Wis. 2d 581, 659 N.W.2d 494.

¶ 10. WISCONSIN STAT. § 895.52 states in pertinent part:

> **(2)** NO DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
>
> 1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115 (2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

The statute defines the term "property" as "real property and buildings, structures and improvements thereon, and the waters of the state . . . ." Sec. 895.52(1)(f). "Recreational activity" means "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. 'Recreational activity' includes . . . outdoor sport, game or educational activity." Sec. 895.52(1)(g). In assessing an activity that is not a statutorily enumerated recreational activity, we must examine all aspects of the activity, including the injured person's subjective assessment of the activity and the intrinsic nature, purpose and consequence of the activity. *Sievert v. Am. Fam. Mut. Ins. Co*, 190 Wis. 2d 623, 629–31, 528 N.W.2d 413 (1995) (holding that where an activity does not specifically fall into the broad definition of "recreational activity," the court is to examine whether the activity at issue is "substantially similar" to the circumstances of a recreational activity).

¶ 11. As noted at the outset, the Kautzes challenge the circuit court's application of WIS. STAT. § 895.52 on two grounds. First, the Kautzes argue that Brenna was injured when she became infected as a

result of climbing on the farm equipment and not as a result of an activity on the land or improvements to the land. The Kautzes maintain that the term "property" as defined in § 895.52 does not include moveable equipment.

¶ 12. The Kautzes wrongly focus on the farm equipment Brenna climbed on as being the instrument of her injury. The Kautzes' complaint alleges that Brenna became infected because fair attendees stepped into runoff from animal wash areas and then tracked the animal waste onto farm equipment displays. The Kautzes further complain that the Agricultural Society was negligent in maintaining the property so as to prevent infection of other fair attendees. Thus, the injuring mechanism is not the farm equipment Brenna was playing on, but rather, it is the bacteria from the animal waste that was tracked onto the equipment from the Agricultural Society's real property. If Brenna had gotten E. coli from a picnic bench or a playhouse, it could not be said that her injury came from the bench or the playhouse. Rather, it would be from the failure of the Agricultural Society to properly handle the animal waste that had accumulated on the ground. We, therefore, conclude that Brenna's injury was directly related to the condition or maintenance of the Agricultural Society's real property and the Kautzes' first challenge to recreational immunity fails. Because we so conclude, we do not need to reach the issue of whether moveable property, such as farm equipment, satisfies the statutory definition of "property."

¶ 13. Next, the Kautzes contend that there was a material issue of fact as to whether they were at the fair for the purpose of engaging in recreational activity. They argue that because they attended the fair both to

check out Simplicity's competitors in the farm equipment industry, a nonrecreational purpose, and to have fun together, a recreational purpose, it is up to the jury to decide if their primary purpose for being at the fair was recreation. The Agricultural Society responds that simply because Brenna and Andrew had multiple reasons for attending the fair does not generate an issue of fact for the jury. Relying on *Lasky v. City of Stevens Point*, 220 Wis. 2d 1, 582 N.W.2d 64 (Ct. App. 1998), it reasons that even if Brenna and Andrew attended the fair for both business and recreation, as long as one of their motives was recreation, then recreational immunity attaches. We agree with the Agricultural Society.

¶ 14.   In *Lasky*, we confronted the question of whether an injured individual who had dual purposes, both recreational and nonrecreational, for being on the property at issue was still "engaged in a recreational activity" for purposes of the statute. There, Lasky filed a negligence claim against the City of Stevens Point for injuries he suffered when he fell on a wooden bridge in a city park. *Id.* at 3. On the day of his fall, Lasky parked his car at the city park and was walking on the trail in order to go to the bakery and to the barbershop, which were located near the park. *Id.* at 4. He admitted that he could have driven to the bakery and barbershop, but he parked his car at the park because he wanted to get some exercise while doing his errands. *Id.*

¶ 15.   The circuit court dismissed his claim on the ground that the city was immune from suit pursuant to Wis. Stat. § 895.52. *Lasky*, 220 Wis. 2d at 3. On appeal, Lasky contended that he was not engaged in a recreational activity at the time of the accident because when he walked through the park, he was on his way to a bakery and a barbershop. *Id.* at 6. We concluded that Lasky was engaged in a recreational activity at the time

of the accident, emphasizing that Lasky had walked through the park to get exercise. *Id.* at 10.

¶ 16. To support our conclusion we relied on our supreme court's decision in *Sievert*. There, the activity at issue was walking uninvited onto a neighbor's dock to greet the neighbor who was in a boat not far from the dock. *Sievert*, 190 Wis. 2d at 626. Our supreme court upheld the two lower courts' determinations that the activity was not recreational. *Id.* at 633. The court concluded that considering the nature and purpose of Sievert's activity, he was not engaged in a recreational activity: his objective behavior and his testimony showed that the sole reason for being on the dock was to greet his neighbor. *See id.; see also Lasky*, 220 Wis. 2d at 10. While the court recognized that "an activity can be both recreational under the statute and social," it concluded that Sievert's activity of walking to greet a neighbor was not a recreational activity. *Sievert*, 190 Wis. 2d at 633.

¶ 17. Applying *Sievert* to the facts in *Lasky*, we concluded that:

> Lasky acknowledged that he was walking in the park to exercise, whereas in *Sievert* the sole purpose of walking on to the dock was to greet a neighbor, not a recreational purpose. The fact that Lasky had a purpose for his walk besides exercise—doing errands—does not, as the court in *Sievert* makes clear, mean that Lasky's walking cannot be a recreational activity.

*Lasky*, 220 Wis. 2d at 10.

¶ 18. Following the method of analysis established in *Lasky*, we conclude that the Kautzes were engaged in a recreational activity at the time of Brenna's injury. This court has repeatedly held that attendance at community fairs, like the Ozaukee

County Fair, constitutes a recreational activity. *See, e.g.,* *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 488, 431 N.W.2d 696 (Ct. App. 1988) (holding that a fair sponsored by a local service club involved activities "substantially similar" to the statutory listing of "nature study," "sight-seeing" and other "educational activity," as to make it a recreational activity under WIS. STAT. § 895.52). Further, the Kautzes concede that one of their purposes for attending the fair was recreation— for Brenna to have fun and enjoy the experience of a fair. Andrew's account of their activities at the fair supports their concession. As *Lasky* teaches us, even though the Kautzes may have had a purpose for their attendance at the fair besides having fun and enjoying the fair offerings, this does not mean that their attendance at the fair cannot be recreational for purposes of the statute. As long as one of the purposes for engaging in the activity is recreation, as it concededly was here, the statute attaches and bars their claim.

¶ 19.  The Kautzes argue that *Lasky* should not apply because Lasky, unlike the Kautzes, did not have "mixed motives" when he was on the city's property. They point out that in reaching our conclusion in *Lasky*, we emphasized that Lasky admitted that he only parked his car near the park and walked through the park so that he could get exercise, a purely recreational activity. *Lasky*, 220 Wis. 2d at 11. While we did not specifically use the phrase "mixed motives," the basic facts in *Lasky* demonstrate that Lasky had multiple purposes for walking through the park. Even though he did not have to, Lasky walked through the park not only to get exercise, but also to run his errands—to go to the bakery and the barbershop. We expressly recognized the dual nature of Lasky's purposes for being on the city's property in our above-quoted holding.

844

¶ 20. Furthermore, our application and interpretation of *Lasky* is consistent with the legislative intent of liberally construing the statute in favor of the landowner. It also furthers the legislative goal of encouraging landowners to open their land to the public: It prevents injured land users from defending against recreational immunity by claiming that he or she had only a secondary intent to recreate and thereby accords landowners a degree of certainty regarding their potential liability for injuries occurring on their land.

¶ 21. For the foregoing reasons, we conclude that WIS. STAT. § 895.52 affords the Agricultural Society immunity from the Kautzes' personal injury action. Accordingly, we affirm the circuit court's grant of summary judgment in favor of the Agricultural Society.

*By the Court.*—Judgment affirmed.