COURT OF APPEALS
DECISION
DATED AND FILED

December 21, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1610**

Cir. Ct. No.  **2018CV36**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

KATHERINE BAUMEL,

PLAINTIFF-APPELLANT,

UNITED STATES OF AMERICA DEPARTMENT OF HEALTH AND HUMAN SERVICES, STATE OF WISCONSIN DEPARTMENT OF HEALTH SERVICES AND GROUP HEALTH COOPERATIVE OF EAU CLAIRE,

INVOLUNTARY-PLAINTIFFS,

V.

SOCIETY INSURANCE, A MUTUAL COMPANY, MICHAEL P. FREAR A/K/A MICHAEL PAUL FREAR, KARI J. FREAR F/K/A KARI J. SCHREIBER-FREAR AND DEER TAIL LODGE, LLC,

DEFENDANTS-RESPONDENTS,

HEALTH TRADITIONS,

DEFENDANT.

APPEAL from an order of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1     STARK, P.J.  Katherine Baumel sued Michael Frear, Kari Frear, and Deer Tail Lodge, LLC (collectively, "the Lodge"), along with the Lodge's insurer, after she tripped and fell on the Lodge's property.  The circuit court granted summary judgment in favor of the Lodge, concluding Baumel's claims were barred by the recreational immunity statute, WIS. STAT. § 895.52 (2019-20).[1]  Baumel argues the court erred because she was not engaged in a recreational activity at the time of her fall.  Alternatively, she argues there is a genuine issue of material fact as to whether the "profit" exception to recreational immunity applies.  We reject these arguments and affirm.

## BACKGROUND

¶2     The Lodge owned a piece of property south of Ladysmith, Wisconsin, where it hosted weddings and special events.[2]  The Lodge's property included a main building, where the events were held, with an attached outdoor bar.  The property also included a number of powered and unpowered campsites, which the Lodge offered for rent only during weddings and other events.

---

[1]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  Deer Tail Lodge, LLC, owned the property in question.  Michael Frear and his wife, Kari Frear, were the sole members of the LLC.

¶3    The Lodge hosted a three-day music festival on its property from June 4 to 6, 2015. Each day of the festival, seven or eight bands performed in an outdoor area of the Lodge's property. Approximately 200 people attended the 2015 music festival, each paying around $20 to $25 for a weekend pass. Attendees could also choose to camp at the Lodge's property during the festival, paying an additional fee to rent a campsite. The campground portion of the property was separated by a snow fence from the part of the property where the music festival took place.

¶4    Baumel attended the 2015 music festival and rented a powered campsite for the weekend. On the evening of June 5, Baumel left the music festival portion of the property and returned to her camper to retrieve a sweatshirt. She remained at the camper for about twenty minutes, and while there she drank a soft drink and showed the camper to an individual who was interested in purchasing it. Thereafter, while walking back to the area where the band was playing, but while still within the campground portion of the property, Baumel tripped on a clump of dirt and fell, injuring her arm.

¶5    Baumel subsequently filed the instant lawsuit against the Lodge, asserting negligence claims and alleging a violation of the safe place statute. The Lodge moved for summary judgment, arguing that Baumel's claims were barred by the recreational immunity statute. Specifically, the Lodge alleged that Baumel was engaged in one of the recreational activities specifically listed in the statute on the day in question—i.e., camping—and that her walking across the campground to and from her camper was "inextricably connected" to her camping activity.

¶6    The Lodge also argued that the profit exception to recreational immunity did not apply because the record showed that the Lodge did not make

3

more than $2,000 during the year 2015 from campsite rentals. In support of that argument, the Lodge submitted an unsigned, unnotarized affidavit of Michael Frear.[3]

¶7     Frear averred that the Lodge began operating the campground portion of its business in 2015, that it rented the campsites only during special events, and that campground usage in 2015 was "extremely limited." Frear further averred that the Lodge's campground had ten powered campsites, that the rest of the sites were unpowered, and that the Lodge charged $35 per weekend for the unpowered sites and $55 per weekend for the powered sites. Frear averred that there were "at most 30 campsites rented for the weekend of the music festival" in 2015, and "[t]he only other campsite rentals during 2015 were at a wedding event where three campsites were rented." Frear also averred that although the Lodge "did not keep written records related to campsite rentals, the total gross revenue from the campgrounds for [2015] was less than $2,000.00."

¶8     Baumel opposed summary judgment, arguing that the Lodge was not entitled to recreational immunity because "Baumel's act of walking[] in the dark to get a sweater during a music festival" was not a recreational activity under the statute. In the alternative, Baumel argued there was at least a genuine issue of material fact as to whether the profit exception to recreational immunity applied. Baumel also argued that the circuit court should ignore Frear's affidavit when analyzing the profit exception because the affidavit was not signed or notarized.

---

[3] In the affidavit, which was filed with the circuit court on April 17, 2020, Frear averred that he was "unable to have this affidavit executed before a notary public at this time due to concerns regarding Covid-19 exposure, but will have it executed as soon as it is advisable to do so."

¶9    Frear later submitted a second, identical affidavit that was both signed and notarized. After a subsequent hearing on the Lodge's summary judgment motion, the circuit court granted the Lodge's motion in an oral ruling, concluding that the Lodge was entitled to recreational immunity. The court reasoned that at the time of her fall, Baumel had "left the music venue … for an activity which was linked to her camping." The court also stated the "uncontroverted evidence" showed that the Lodge "earned less than th[e] threshold amount … for recreational use immunity." The court later entered a written order dismissing Baumel's claims against the Lodge, and Baumel now appeals.[4]

## DISCUSSION

¶10    We independently review a grant of summary judgment, using the same methodology as the circuit court. *Kautz v. Ozaukee Cnty. Agric. Soc'y*, 2004 WI App 203, ¶8, 276 Wis. 2d 833, 688 N.W.2d 771. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). When reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party. *CED Props., LLC v. City of Oshkosh*, 2018 WI 24, ¶19, 380 Wis. 2d 399, 909 N.W.2d 136. Where the facts are undisputed, whether a party is

---

[4] We note that the Lodge uses party designations, rather than party names, throughout its appellate brief. Baumel also refers to the Lodge by its party designation, rather than by name. We remind counsel for both parties that the Rules of Appellate Procedure require "[r]eference to the parties by name, rather than by party designation, throughout the argument section" of a party's brief. *See* WIS. STAT. RULE 809.19(1)(i).

immune from liability under the recreational immunity statute presents a question of law for our independent review. *Kautz*, 276 Wis. 2d 833, ¶8.

## I. Recreational activity

¶11    The recreational immunity statute provides that subject to certain exceptions, no property owner "is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." WIS. STAT. § 895.52(2)(b).  The statute broadly defines the term "recreational activity" to mean "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity."  Sec. 895.52(1)(g).  The statute then lists a number of specific activities that are included in the term "recreational activity." *Id.*  "[C]amping" is one of those specifically enumerated activities. *Id.*

¶12    The recreational immunity statute "does not specifically identify walking as a recreational activity, but depending on the circumstances, it may qualify as such." *Wilmet v. Liberty Mut. Ins. Co.*, 2017 WI App 16, ¶11, 374 Wis. 2d 413, 893 N.W.2d 251.  As relevant here, "a 'recreational activity' includes a walk that is 'inextricably connected' to an activity that would otherwise qualify under the statute." *Id.* (citing *Urban v. Grasser*, 2001 WI 63, ¶¶20-21, 243 Wis. 2d 673, 627 N.W.2d 511).

¶13    Applying these legal principles to the undisputed facts of this case, we conclude, as a matter of law, that Baumel was engaged in a recreational activity at the time of her fall.  Baumel was camping on the Lodge's property, which is one of the recreational activities specifically enumerated in WIS. STAT. § 895.52(1)(g).  Prior to her fall, Baumel had returned to her campsite from the music festival to retrieve a sweatshirt.  She remained at the campsite for about

twenty minutes, drank a beverage, and showed her camper to an individual who was interested in purchasing it. She then fell while walking away from her campsite and back toward the music festival. Her fall occurred in the campground area of the Lodge's property. Absent her decision to camp at the Lodge's property for the weekend—and the resultant presence of her camper and sweatshirt in the campground area—Baumel would not have been walking in the campground and would not have encountered the allegedly uneven ground where her fall occurred. Under these circumstances, the undisputed facts establish that Baumel's walk was inextricably connected to a recreational activity—i.e., camping. Baumel was therefore engaged in a recreational activity at the time of her fall.

¶14 Baumel argues that she was on the Lodge's property to attend a paid music festival, which is not a recreational activity. She contends that she would not have been camping on the Lodge's property absent her attendance at the music festival. Be that as it may, the undisputed facts show that Baumel engaged in camping activity on the Lodge's property. She entered the campground with her camper in order to camp for the weekend. Her sweatshirt—which she had returned to the campground to retrieve prior to her fall—was stored in her camper. The camper (and sweatshirt) would not have been in the campground if Baumel had not been camping there. Thus, retrieving the sweatshirt was related to Baumel's camping, which is a statutorily enumerated recreational activity. Notably, Baumel did not need to camp on the Lodge's property to attend the music festival; she expressly chose to do so. The fact that Baumel could not have camped on the Lodge's property that weekend absent her attendance at the music festival makes no difference to our analysis, given Baumel's undisputed camping activity and the inextricable connection between that activity and her walk to retrieve her sweatshirt.

¶15    Citing **Hall v. Turtle Lake Lions Club**, 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), Baumel asserts that walking is not inextricably connected to an immune activity if the walk is merely a "momentary diversion" from a nonimmune activity.  She contends that her act of walking to retrieve her sweatshirt from her camper was simply a momentary diversion from her attendance at the music festival—a nonimmune activity—and, as such, it does not qualify as a recreational activity.

¶16    Baumel's reliance on **Hall** is misplaced.  Hall was injured when he stepped in a hole in a village park during a fair.  *Id.* at 487.  We concluded that Hall's attendance at the fair constituted a recreational activity under the statute. *Id.* at 488.  We then summarily rejected Hall's argument that even if the fair qualified as a recreational activity, Hall was not engaged in a recreational activity at the time of his fall "because he took a break from fair activities and was walking to the men's restroom when the accident occurred."  *Id.* at 489.  We explained that Hall's "ordinary, necessary, and momentary diversion while still on the fair grounds certainly does not remove the landowner from the protection of the statute."  *Id.*

¶17    Contrary to Baumel's assertion, **Hall** does not stand for the proposition that a walk which is a momentary diversion from a nonimmune activity cannot be inextricably connected to a recreational activity for purposes of the recreational immunity statute.  Instead, **Hall** addressed a situation where a person was injured during a momentary diversion from a recreational activity—a circumstance that is not at issue in this case.  In any event, Baumel's walk in this case was not a mere momentary diversion from the music festival.  She left the music festival to retrieve a sweatshirt from her camper, and she then remained at her campsite for about twenty minutes.  While there, she drank a beverage and

showed her camper to a potential buyer. Unlike the plaintiff's walk to the restroom in *Hall*, Baumel's walk to and from her camper in this case cannot reasonably be characterized as a momentary diversion.

¶18 Baumel's reliance on *Hupf v. City of Appleton*, 165 Wis. 2d 215, 221, 477 N.W.2d 69 (Ct. App. 1991), is similarly misplaced. Hupf was injured when he was hit by a softball while walking in a city park. *Id.* at 218. Hupf was in the park to participate in a recreational softball league sponsored by the city. *Id.* at 220. His injury did not occur during a game, however, but while he was walking between two baseball diamonds near the concession stand. *Id.*

¶19 On appeal, we noted that "[a]lthough a walk in the park for the purpose of exercise, relaxation or pleasure is an activity for which the owner is immune, the legislature did not intend to create a corridor of immunity from the ball field to the parking lot when the walk is inextricably connected to a non[]immune activity." *Id.* at 221. We then noted that WIS. STAT. § 895.52(1)(g) "excepts from its definition of recreational activities 'any organized team sport activity sponsored by the owner ....'" *Hupf*, 126 Wis. 2d at 221. Although Hupf was not actively participating in an organized team sport at the time of his injury, we reasoned that if "he were traveling directly from this excepted activity by the only available avenue for the purpose of exiting the premises, the exception to immunity endures." *Id.*

¶20 *Hupf* stands for the proposition that a walk does not constitute a recreational activity if, at the time of injury, the individual in question was traveling directly from a nonimmune activity by the only available avenue for the purpose of exiting the premises. Unlike *Hupf*, however, this case does not involve travel directly from a nonimmune activity. Instead, it is undisputed that at the time

of her fall, Baumel was walking away from her camper after retrieving a sweatshirt from it, and after she had spent approximately twenty minutes at the camper and had shown it to a potential buyer. The fall occurred in the campground area of the Lodge's property—an area that Baumel would not have been walking through absent her camping activity. *Hupf* is therefore inapposite.

¶21 Baumel also relies on *Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*, 2005 WI App 246, 288 Wis. 2d 394, 707 N.W.2d 897. In that case, Rintelman was injured when she fell while chaperoning an educational retreat for young adults at a "rural camping and retreat facility." *Id.*, ¶¶1-2. Rintelman's fall occurred when she was walking from one lodge to another on the camp premises because the bathroom facilities at the first lodge had stopped working. *Id.*, ¶4.

¶22 We concluded Rintelman was not engaged in a recreational activity at the time of her fall because she was merely walking from one building to another for a utilitarian purpose, rather than walking for exercise or to enjoy the scenery. *Id.*, ¶¶10, 13. Citing *Hupf*, we stated that "[m]oving from one building to another is not a 'recreational activity' unless it is inextricably connected to an activity that *is* recreational." *Rintelman*, 288 Wis. 2d 394, ¶13. We then reasoned that although the program participants at the educational retreat may have been present on the camp property to participate in recreational activities, there was no evidence that Rintelman was there for that purpose. *Id.*, ¶17. Instead, the evidence showed that Rintelman was on the property as a volunteer chaperone and "did not participate in any of the recreational activities." *Id.* Accordingly, Rintelman's walk between buildings was not inextricably connected to her participation in a recreational activity. *See id.*, ¶18.

¶23  ***Rintelman*** is distinguishable because, unlike the plaintiff in that case, it is undisputed that Baumel was engaging in a recreational activity on the Lodge's property—i.e., camping.  We have further concluded that the walk during which Baumel's fall occurred was inextricably connected to her camping activity.  Thus, unlike the plaintiff in ***Rintelman***, the undisputed facts establish that Baumel was engaged in a recreational activity at the time of her fall.

¶24  Baumel next argues that because the Lodge profited from the music festival and the campsite rentals, granting recreational immunity to the Lodge under the facts of this case would be inconsistent with the purpose of recreational immunity—that is, "to limit the liability of property owners toward others who use their property for recreational activities *under circumstances in which the owner does not derive more than a minimal pecuniary benefit*."  *See* 1983 Wis. Act 418, § 1 (emphasis added).  The legislature effectuated that purpose, however, by creating the profit exception to recreational immunity.  *See* WIS. STAT. § 895.52(6)(a).  Whether Baumel was engaged in a recreational activity at the time of her fall and whether the profit exception to recreational immunity applies are distinct legal issues.  We address Baumel's arguments regarding the profit exception in the next section of this opinion.

¶25  Baumel also argues that the "logical extension" of applying recreational immunity under the circumstances of this case "is that any property owner holding a paid event need only offer an ancillary recreational activity to render itself immune."  We reject this argument because it ignores the plain language of the recreational immunity statute.  WISCONSIN STAT. § 895.52(2)(b) expressly provides that a property owner is not liable for the death of, injury to, or any death or injury caused by "a person *engaging in a recreational activity* on the owner's property."  (Emphasis added.)  Thus, regardless of whether both

11

recreational and nonrecreational activities are occurring on an owner's property, the statute clearly provides that an owner is immune from liability only for deaths or injuries sustained or caused by a person who is actually engaging in a recreational activity. Consequently, the property owner in Baumel's hypothetical would not be entitled to blanket immunity for all injuries or deaths occurring on his or her property simply because the owner offered an ancillary recreational activity.

¶26     As explained above, in this case, the undisputed facts show that Baumel's injury occurred while she was walking from her camper back to the music festival, an activity that was inextricably connected to her camping activity. The fall occurred in the campground area of the Lodge's property—an area that Baumel would not have been walking through absent her decision to camp on the Lodge's property that weekend. Baumel's trip to the campground was not merely a momentary diversion from the music festival, as she spent about twenty minutes at her camper, during which time she drank a beverage and showed the camper to a potential buyer. Under these circumstances, and because camping is specifically listed as a recreational activity in the recreational immunity statute, the circuit court properly concluded that Baumel was engaged in a recreational activity at the time of her fall.

## II. Profit exception

¶27     Baumel next argues that even if she was engaged in a recreational activity at the time of her fall, the circuit court nevertheless erred by granting the Lodge summary judgment because there is a genuine issue of material fact as to whether the profit exception to recreational immunity applies here. The profit

exception provides that an owner of private property is not entitled to recreational immunity if the owner

> collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the death or injury occurs, and the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the death or injury occurs exceeds $2,000.

WIS. STAT. § 895.52(6)(a).

¶28 The circuit court relied on the uncontroverted averments in Michael Frear's affidavit in support of its conclusion that that profit exception to recreational immunity did not apply. Frear averred that: (1) the Lodge had ten powered campsites, and the rest were unpowered; (2) the Lodge charged $35 per weekend for unpowered campsites and $55 per weekend for powered campsites; (3) at most, thirty campsites were rented during the weekend of the 2015 music festival; and (4) the only other campsite rentals in 2015 occurred at a wedding, during which three campsites were rented.

¶29 When viewed in the light most favorable to Baumel, these uncontroverted averments establish that the Lodge did not collect more than $2,000 in payments for camping on its property during the year 2015. If we assume that all ten of the Lodge's powered campsites were rented during the weekend of the 2015 music festival, then the Lodge would have earned $550 that weekend from powered campsite rentals. The Lodge would have also earned $700 that weekend from the rental of twenty unpowered campsites. Thus, the Lodge would have earned a total of $1,250 from campsite rentals during the weekend of the music festival. If we assume that all three of the other campsites that the Lodge rented during 2015 were powered campsites, then the Lodge would have

earned an additional $165 from campsite rentals that year. Accordingly, viewing the uncontroverted averments in Frear's affidavit in the light most favorable to Baumel, the total amount that the Lodge earned from campsite rentals in 2015 would have been $1,415—which is below the $2,000 threshold set forth in WIS. STAT. § 895.52(6)(a).

¶30 Baumel argues that the circuit court should not have considered Frear's affidavit because it was neither signed nor notarized. *See Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶38, 323 Wis. 2d 1, 778 N.W.2d 662 (2009) (noting that an affidavit submitted in support of summary judgment must be notarized); *Juneau Cnty. Dep't of Hum. Servs. v. B.J.*, Nos. 2021AP1359, 2021AP1360, 2021AP1361, unpublished slip op. ¶28 (WI App Nov. 4, 2021) (concluding that an unsigned affidavit does not meet the definition of an "affidavit" for purposes of WIS. STAT. § 802.08(2)).[5] This argument is disingenuous. The record clearly shows that while Frear initially submitted an unsigned and unnotarized affidavit in support of the Lodge's summary judgment motion, he subsequently submitted an identical affidavit that was both signed and notarized. Frear submitted the signed and notarized affidavit approximately three weeks before the circuit court's hearing on the Lodge's summary judgment motion, and approximately six weeks before the court issued its oral ruling granting the Lodge summary judgment. Baumel does not develop any argument that the court should not have considered Frear's signed and notarized affidavit because it was untimely. We therefore reject her argument that the court erred by relying on Frear's affidavit.

---

[5] An unpublished opinion authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

¶31 Baumel also argues that even if the circuit court properly considered Frear's affidavit, other evidence in the record created a genuine issue of material fact as to whether the Lodge earned more than $2,000 from campsite rentals during the year 2015. Baumel claims that during his deposition, Frear testified that the Lodge "hosted 50-60 events during 2015 at which camping was available for attendees." Baumel then asserts, based on Frear's affidavit, that the Lodge must have earned at least $1,050 from campsite rentals during the 2015 music festival, as Frear averred that thirty campsites were rented that weekend for a minimum of $35 each. Given that the music festival was "only 1 of 50 or 60 such events" during 2015, Baumel contends the evidence gives rise to a reasonable inference that the Lodge made more than $2,000 from campsite rentals that year. Baumel further contends that Frear's averment that the Lodge made less than $2,000 from campsite rentals in 2015 does not overcome this reasonable inference because Frear conceded the Lodge did not keep written records related to campsite rentals.

¶32 This argument fails because Baumel has misrepresented Frear's deposition testimony. Contrary to Baumel's assertion, Frear did not testify that the Lodge hosted fifty to sixty events in 2015 *during which camping was available to attendees*. Instead, Frear merely testified that the Lodge hosted fifty to sixty events during 2015. He was not asked during his deposition—and he did not testify—about the number of events in 2015 during which the Lodge offered campsites for rent. As such, Frear's deposition testimony does not rebut or conflict with the averments in his affidavit regarding the Lodge's campsite rentals in 2015 or the amount of money that the Lodge earned from those rentals. As explained above, even viewed in the light most favorable to Baumel, those averments demonstrate that the total amount the Lodge earned from campsite

rentals in 2015 was no more than $1,415. We therefore reject Baumel's argument that a genuine issue of material fact exists as to whether the Lodge earned more than $2,000 from campsite rentals during 2015.

¶33    Finally, Baumel also argues—for the first time in her reply brief—that when determining whether the Lodge met the $2,000 threshold for application of the profit exception, we must consider both the Lodge's earnings from campsite rentals and its earnings from ticket sales for the 2015 music festival. Baumel asserts that we must do so because the "music festival income was an indirect pecuniary benefit to [the Lodge] from its use of its property as a camping venue." In support of this argument, Baumel relies on *Douglas v. Dewey*, 154 Wis. 2d 451, 462-63, 453 N.W.2d 500 (Ct. App. 1990), where we held that for purposes of the profit exception, the legislature "intended to include indirect pecuniary benefits as payments to the property owner for the use of his or her property for a recreational activity."

¶34    We decline to address Baumel's indirect-pecuniary-benefits argument because it was raised for the first time in her reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). "It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party." *Id.* If Baumel had raised her argument regarding indirect pecuniary benefits in her main brief, the Lodge could have presented an argument that its income from ticket sales during the 2015 music festival did not constitute an indirect pecuniary benefit of the camping activity on its property, or that *Douglas*'s holding was inapplicable for some other reason. Because the Lodge did not have the opportunity to do so, it would be inherently unfair for us to address Baumel's indirect-pecuniary-benefits argument.

¶35    Instead, for the all of the reasons explained above, we conclude the undisputed facts establish that the Lodge did not earn more than $2,000 from campsite rentals during the year 2015.   As such, the profit exception to recreational immunity does not apply.   We therefore affirm the circuit court's grant of summary judgment in favor of the Lodge.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.