Terry LEE, Plaintiff-Appellant,

v.

ELK ROD & GUN CLUB, INC., and American States
Insurance Company, Defendants-Respondents,

WISCONSIN LABORERS HEALTH FUND,
Defendant.

Court of Appeals

*No. 91-0386-FT. Submitted on briefs June 4, 1991.—Decided
July 23, 1991.*

(Also reported in 473 N.W.2d 581.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Roberta E. Gilbertson* of *Bye, Krueger & Goff, S.C.* of River Falls.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Douglas M. Johnson* and

*Brian E. Running* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Terry Lee appeals a summary judgment dismissing his claims against the Elk Rod & Gun Club, Inc.[1] Lee slipped and fell on icy ground beneath a tent erected by the club along the shore adjacent to its annual ice fishing contest on Bugle Lake. In granting summary judgment, the court rejected Lee's assertions that the club should not benefit from the recreational immunity statute, sec. 895.52 Stats., first because the tent housed illegal gambling activities and further because a factual dispute exists whether the club's overall operations were essentially commercial and not recreational. We conclude that illegal gambling is not recreational activity within the meaning of the statute and was sufficiently separate and distinct from the fishing contest so that participation in the former does not protect the owner merely because it was offered contemporaneously with the latter. We therefore reverse the summary judgment and remand for further proceedings. We need not decide Lee's second assertion, that the overall nature of the tent operations, including the sale of food, drink and the games, even if their illegality is disregarded, required a factual resolution of whether the activities were commercial rather than recreational.

On February 5, 1989, the Elk Rod & Gun Club, Inc., a nonprofit organization, held its thirtieth annual ice fishing contest on Bugle Lake, in the city of Independence, Wisconsin. The money raised at the contest is used to purchase land for public hunting and fishing and to support various projects of interest to the club.

---

[1]This is an expedited appeal under Rule 809.17.

Contest entrants were charged a $2 admission fee to compete in the ice fishing contest and for a chance to win door prizes. The club had erected a tent on the lakeshore in which food and drink, including brandy and beer, was sold and some games of chance were operated, including black jack, pull tabs and a dice game called "chuck-a-luck." The fishing contestants could also use the heated tent as a warming house. The club had scraped snow off the ground inside the tent and covered the ground with wood chips. The tent was located on city park land with the permission of the city council. There was no separate admission charged to the public in order to enter the tent. The club netted approximately $9,000 from the day's events, although the receipts from the separate activities are not a matter of record. At times there were as many as 1,500 to 2,000 persons on the ice and perhaps 250 people in the tent.

Lee went to the ice fishing contest with a friend, splitting the cost of an entry ticket. They fished from 12:30 p.m. to 3:45 p.m., at which time they left the ice and went to the tent to eat and play chuck-a-luck. After playing the game for a short time, Lee was walking toward an exit to use the toilet facilities when he slipped, fell and broke his ankle.

■■■■

This is a review of a summary judgment. We review summary judgment determinations independent of the trial court's decision. *Acharya v. Carroll,* 152 Wis. 2d 330, 338, 448 N.W.2d 275, 279 (Ct. App. 1989). We apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court. *Kruschke v. City of New Richmond,* 157 Wis. 2d 167, 169, 458 N.W.2d 832, 833 (Ct. App. 1990).

Section 895.52(2)(a), Stats., grants a landowner immunity from liability to "any person who enters the owner's property to engage in a recreational activity." The club, as an occupant of the city park land, is treated as a landowner for purposes of recreational immunity. *See Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 490-91, 431 N.W.2d 696, 698 (Ct. App. 1988) (fraternal organization that sponsored community fair at a village park was an occupant treated as the landowner for purposes of sec. 895.52); sec. 895.52(1)(d)1, Stats.

There is no dispute that the club operated games of chance in the tent. We conclude that an illegal commercial gambling operation places the operator outside the protection of the immunity statute.[2]

Section 895.52(1)(g), Stats., defines "recreational activity" as:

> [A]ny outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity

---

[2]Dispensing brandy may have been illegal also. The statutes permit temporary licenses for wine and beer but not liquor. Because the plaintiffs did not raise the issue, we do not include it in our analysis.

sponsored by the owner of the property on which the activity takes place.

While this statute is to be liberally construed in favor of property owners, *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 476-77, 464 N.W.2d 654, 659 (1991); sec. 1, 1983 Wis. Act 418, there is no indication that the legislature intended to include an otherwise illegal and prohibited activity within its boundaries. In fact, from the adoption of our first constitution in 1848, Wisconsin banned or at least limited the legislature from authorizing various kinds of gambling. Farnsley, *Gambling and the Law; the Wisconsin Experience, 1848-1980,* 1980 Wis. L. Rev. 811, 811. The amendments to the constitution authorizing certain forms of gambling have no application to the facts here. In keeping with the constitution, sec. 945.03, Stats., renders commercial gambling a felony; sec. 945.04 also carries criminal penalties for those persons who permit real estate to be used as a place of gambling. These laws do not provide exceptions for non-profit organizations. It is incongruous to construe the recreational immunity statute to allow for illegal gambling as a protected activity when the same activities are in apparent violation of the constitution and the criminal code.

Lee challenges the summary judgment on a separate ground: that even if the games were legal, the affidavits and depositions of record raise a material issue of disputed fact whether the operation was commercial and not recreational under the test established in *Silingo v. Village of Mukwonago,* 156 Wis. 2d 536, 544, 458 N.W.2d 379, 382 (Ct. App. 1990). He points to the sale of food and drink and games and the absence of a breakdown of the profits derived from these activities. The trial court rejected his argument, noting that the heated

tent was used as a warming house, and that the vast majority of the participants were on the ice and retreated to the tent for food and temporary shelter. The court characterized the tent activities as "incidental to, and a part of, the over-all recreational activities of the ice fishing contest." It may be that the tent activities are in fact sufficiently distinguishable from the fishing contest so as to require a factual determination whether they constitute recreational activity. Because the illegality of the activities alone bars immunity, we need not decide whether the preceding facts are amenable to summary judgment.

*By the Court.*—Judgment reversed.