Carol WILMET and Gerald Wilmet,
Plaintiffs-Appellants,

v.

LIBERTY MUTUAL INSURANCE COMPANY and
City of De Pere, Defendants-Respondents,

Kathleen SEBELIUS and ABC Insurance Company,
Defendants.

Court of Appeals

*No. 2015AP2259. Submitted on briefs June 14, 2016.
—Decided February 28, 2017.*

2017 WI App 16

(Also reported in 893 N.W.2d 251.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Kristen S. Scheuerman Knutson* of *Herrling Clark Law Firm, Ltd.*, Appleton.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Peter M. Farb* and *J. Michael Sturino* of *Law Offices of Thomas P. Stilp*, Milwaukee.

A nonparty brief was filed by *William C. Gleisner, III* and *Michael J. Cerjak* of *Pitman, Kalkhoff, Sicula & Dentice, S.C.*, for Wisconsin Association For Justice.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. Carol and Gerald Wilmet appeal an order dismissing their claims against the City of De Pere and its insurer as being barred by the recreational immunity statute, Wis. Stat. § 895.52 (2015–16).[1] The sole issue on appeal is whether that statute confers immunity against the claims of a person who is injured while undisputedly on the property to supervise a child engaged in "recreational activity." Like the circuit court, we conclude supervision of a child engaged in a recreational activity falls within the statute's ambit. Supervision, by definition, involves overseeing and directing another's performance of an activity, and it is similar in meaning to "practice" and "instruction"—two activities that are expressly within § 895.52's scope. Accordingly, we hold the City is entitled to immunity, and we affirm.

## BACKGROUND

¶ 2. The Wilmets filed the present lawsuit alleging that on August 18, 2012, Carol Wilmet was on the premises of the VFW Swimming Pool, which the City owns and operates, when she tripped on a cement doorstop and was injured. The Wilmets asserted claims for a violation of the safe place statute (Wis. Stat. § 101.11), negligence, and negligence per se. The City invoked the recreational immunity statute, Wis. Stat. § 895.52, as an affirmative defense to each claim, and it sought the action's dismissal on that basis.

¶ 3. The parties and circuit court treated the City's motion to dismiss as one for summary judgment. The City appears to have initially believed that Carol was swimming at the pool. However, Carol subse-

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

quently filed an affidavit in which she averred that she was at the pool on August 18 to drop off her grandchildren. After dropping them off, she remained outside the premises, supervising her grandchildren from behind the fenced perimeter of the pool as they swam. Carol further averred her grandson shouted to her that he was going to jump off the high dive. Carol observed there were no lifeguards in the area, and she was concerned about her grandson's safety. Carol told her grandson to wait, entered the pool premises without paying the entry fee (but with the attendant's permission), and went immediately from the entrance through the locker room and toward the high dive. Carol was injured as she walked toward the high dive. It is undisputed Carol did not plan to swim at the pool or stay on the premises following her grandson's dive. According to Carol, "[t]he only reason [she] entered the Pool premises was to ensure [her] grandson's safety and supervise his jump off the high dive."

¶ 4. The Wilmets opposed the City's summary judgment motion on the basis that Carol, in supervising her grandson, "was not partaking in a recreational activity just prior to or when the incident occurred." Rather, the Wilmets argued Carol was simply walking to get from one place to another, not to, for example, exercise or enjoy the scenery. Relying on *Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*, 2005 WI App 246, 288 Wis. 2d 394, 707 N.W.2d 897, the Wilmets argued such walking was not a "recreational activity" giving rise to immunity. The City responded that Carol's admitted activity of supervising her grandson, who was himself indisputably engaged in a recreational activity, was sufficient to bring the Wilmets' claims within the ambit of the recreational immunity statute.

¶ 5. The circuit court concluded that, given the undisputed facts, the City was entitled to recreational immunity. The court remarked that the recreational immunity statute is to be liberally construed in favor of protecting property owners. In the court's view, the legislature's purpose in enacting the statute—to encourage land owners to open up their property for recreational use—would be thwarted if individuals supervising, but not themselves participating in, a recreational activity were allowed to recover for injuries sustained during the course of their supervision. The Wilmets appeal.

## DISCUSSION

¶ 6. Summary judgment allows controversies to be settled without trial when there are no disputed material facts and only legal issues are presented. *Lasky v. City of Stevens Point*, 220 Wis. 2d 1, 5, 582 N.W.2d 64 (Ct. App. 1998). In reviewing motions for summary judgment, appellate courts apply, in the same manner as circuit courts, the standards set forth in WIS. STAT. § 802.08(2). *Kruschke v. City of New Richmond*, 157 Wis. 2d 167, 169, 458 N.W.2d 832 (Ct. App. 1990). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Subsec. 802.08(2).

¶ 7. "Recreational immunity under WIS. STAT. § 895.52 is a defense that may entitle a moving party to summary judgment." *Milton v. Washburn Cty.*, 2011

421

WI App 48, ¶ 7, 332 Wis. 2d 319, 797 N.W.2d 924. The statute "recognizes 'the dramatic shrinkage of the public's access to recreational land in an increasingly crowded world' and encourages landowners to open their property to the public for recreational use" by removing potential causes of action by property users against property owners. *Held v. Ackerville Snowmobile Club, Inc.*, 2007 WI App 43, ¶ 8, 300 Wis. 2d 498, 730 N.W.2d 428 (quoting *Kosky v. International Ass'n of Lions Clubs*, 210 Wis. 2d 463, 477, 565 N.W.2d 260 (Ct. App. 1997)); *see also Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994). The immunity provisions of the statute together provide "that owners of land are not liable for injury to a person engaging in a recreational activity on the owner's property." *Hupf v. City of Appleton*, 165 Wis. 2d 215, 219, 477 N.W.2d 69 (Ct. App. 1991).[2]

---

[2] Specifically, the statute provides, in relevant part:

**(2)** No DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

WIS. STAT. § 895.52(2). Additionally, the statute provides that, except as provided in subsections (3) to (6), "no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." Para. 895.52(2)(b). We need not address the exceptions to immunity contained in subsections (3) to (6) because there is no argument for their application in this case. *See Sauer v.*

¶ 8. In deciding the applicability of the recreational immunity statute, we must first determine whether Carol was engaging in a "recreational activity" under WIS. STAT. § 895.52 at the time she was injured. *See Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 628, 528 N.W.2d 413 (1995). A "recreational activity" is defined in § 895.52(1)(g), which contains three parts. The first part "defines recreational activity as 'any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity.' " *Auman ex rel. Auman v. School Dist. of Stanley-Boyd*, 2001 WI 125, ¶ 8, 248 Wis. 2d 548, 635 N.W.2d 762 (quoting § 895.52(1)(g) (1999–2000)). The second part of the definition lists over two dozen specific activities the legislature has designated as "recreational activities." *Id.* "The third part of the statutory definition broadly adds 'and any other outdoor sport, game or educational activity.' " *Id.* (quoting § 895.52(1)(g) (1999–2000)).[3]

¶ 9. When interpreting a statute, we begin with its language. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is generally given its common, ordinary, and accepted meaning. *Id.* In addition, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-

*Reliance Ins. Co.*, 152 Wis. 2d 234, 237, 448 N.W.2d 256 (Ct. App. 1989); *see also Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 (court of appeals will not abandon neutrality to develop arguments for the parties).

[3] The current version of the statute contains the same three-part structure and relevant language.

related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. If this process yields a plain, clear meaning, there is no ambiguity in the statute and it is applied accordingly. *Id.* If the statute is ambiguous—that is, capable of being understood by reasonable, well-informed persons in two or more senses—we may resort to extrinsic interpretive aids, such as legislative history, to resolve the ambiguity. *Id.*, ¶¶ 47, 50.

■■■■■■■

¶ 10. When, as here, the material facts are undisputed, the interpretation and application of a statute are questions of law, which we review independently. *See Sievert*, 190 Wis. 2d at 628. There is no dispute Carol's grandson was engaged in the recreational activities of diving and swimming at the time Carol was injured. "Water sports" are designated recreational activities, *see* WIS. STAT. § 895.52(1)(g), and diving is a water sport, *see Strong v. Wisconsin Chapter of Delta Upsilon*, 125 Wis. 2d 107, 108, 370 N.W.2d 285 (Ct. App. 1985). There is also no dispute over what Carol was doing at the time she was injured: Carol was walking through the locker room toward the high dive to "ensure [her] grandson's safety and supervise his jump off the high dive."

■■■■■■■

¶ 11. The Wilmets argue Carol's mere walking at the time she was injured within the pool area was not a recreational activity. WISCONSIN STAT. § 895.52 does not specifically identify walking as a recreational activity, but depending on the circumstances, it may qualify as such.[4] A "recreational activity" includes a

---

[4] *Compare, e.g., Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 625, 528 N.W.2d 413 (1995) (walking on

walk that is "inextricably connected" to an activity that would otherwise qualify under the statute. *Urban v. Grasser*, 2001 WI 63, ¶¶ 20–21, 243 Wis. 2d 673, 627 N.W.2d 511. This appeal, however, does not turn on whether Carol's walking itself was for the purpose of her recreating.

¶ 12. Rather, the parties' dispute centers on whether supervising another person, who is himself or herself engaged in a recreational activity, falls within the immunity statute's reach so as to preclude liability.[5] The Wilmets point out that "supervising another engaged in a recreational activity" is not listed among the enumerated recreational activities in WIS. STAT. § 895.52(1)(g). These examples, however, are not exclusive. *Sauer*, 152 Wis. 2d at 240. "The legislature recognized that it would be impossible to list in the statute every recreational activity." *Auman*, 248 Wis. 2d 548, ¶ 9.

---

neighbor's dock to communicate a greeting not a recreational activity), *and Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*, 2005 WI App 246, ¶¶ 4, 18, 288 Wis. 2d 394, 707 N.W.2d 897 (walking between lodges during educational retreat not a recreational activity), *with Urban v. Grasser*, 2001 WI 63, ¶ 32, 243 Wis. 2d 673, 627 N.W.2d 511 (walking across neighbor's property to access boat for recreation was a recreational activity), *and Lasky v. City of Stevens Point*, 220 Wis. 2d 1, 10, 582 N.W.2d 64 (Ct. App. 1998) (walking in a park for exercise on the way to do errands is a recreational activity).

[5] The Wilmets do not contend that the fact Carol never actually got to supervise her grandson's jump off the high dive should affect the analysis of whether the City is entitled to immunity for her supervising her grandson on the pool property. As her own testimony makes clear, she was walking on the pool property with the intent of going to supervise her grandson's dive.

¶ 13. Accordingly, the act creating the current version of the recreational immunity statute contained a statement of legislative intent providing, among other things, that the legislation "should be liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418, § 1. As our supreme court has stated, the legislature "expressed its intent that courts interpret the statutory definition of recreational activity to include those activities that are substantially similar to the listed activities or undertaken under substantially similar circumstances as the listed activities." *Auman*, 248 Wis. 2d 548, ¶ 9.[6] This statement of legislative intent has been consistently, and properly, relied upon by our courts as an interpretive aid. *See, e.g., Roberts v. T.H.E. Ins. Co.*, 2016 WI 20, ¶ 28, 367 Wis. 2d 386, 879 N.W.2d 492; *Peterson v. Midwest Sec. Ins. Co.*, 2001 WI 131, ¶ 21, 248 Wis. 2d 567, 636 N.W.2d 727; *see also Kalal*, 271 Wis. 2d 633, ¶ 49 (endorsing references to explicit statements of legisla-

---

[6] It is worth noting that the statement of legislative intent provides, in relevant part:

> While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar *circumstances* or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.

1983 Wis. Act 418, § 1 (emphasis added). The legislature used both the term "circumstances" and "activities" when referring to the existence of substantially similar contexts in which recreational immunity applies. The former term must have been intended to have independent meaning, and it is broader than just considering the similarities of any particular activities.

tive purpose or scope as part of the plain-meaning inquiry).[7]

¶ 14. Each recreational immunity case "poses an intensely fact-driven inquiry." *Auman*, 248 Wis. 2d 548, ¶ 12. We apply a multi-factor test to ascertain whether a particular activity is "substantially similar" to those enumerated in the statute, including: (1) the activity's intrinsic nature; (2) the purpose of the activity; (3) the activity's consequences; (4) the property user's intent and reason for being on the property; (5) the nature of the property; and (6) the property owner's intent. *Id.*; *see also Rintelman*, 288 Wis. 2d 394, ¶¶ 7–17. The focus of the inquiry is whether, under the totality of the circumstances, a reasonable person would understand the injured person to have entered the property to engage in a recreational activity. *Auman*, 248 Wis. 2d 548, ¶ 12.

¶ 15. In this case, the first part of the "recreational activity" definition in WIS. STAT. § 895.52(1)(g) provides the most compelling clues as to whether

---

[7] In its amicus brief, the Wisconsin Association for Justice (WAJ) contends that a stated legislative intent to have a statute be broadly construed cannot "insulate the statute from customary rules of statutory construction." This is so, it contends, because doing otherwise violates constitutional separation of powers principles insomuch as courts will be abdicating their role in deciding questions of statutory construction, especially when the legislature has derogated the common law. While at one point the WAJ cites *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, in the course of its argument on this point, it ignores that portion of *Kalal* expressly endorsing the use of explicit statements of legislative purpose or scope as part of a court's plain-meaning inquiry as part of statutory construction. *Id.*, ¶ 49.

supervising another engaged in a recreational activity is itself a recreational activity under the statute.[8] This broad definitional element states that a "recreational activity" includes "practice or instruction" in any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure. *Id.* Both "practice" and "instruction" in an activity are substantially similar in meaning to "supervising" an activity, such that we conclude there is recreational immunity against the claims of a person injured while supervising another's recreational activity.[9]

¶ 16. According to Carol's affidavit, her sole intent for entering the pool premises was to supervise her grandson. The intrinsic nature, purpose and consequences of this activity are best ascertained by the dictionary definition of the verb "supervise." *See Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995) (observing that, for purposes of statutory construction, the "common and approved usage of a word may be established by resort to dictionary definitions"). "Supervise" is defined as follows: "to coordinate, direct, and inspect continuously and at first hand the

---

[8] Because we conclude Wisconsin law adequately resolves the issue in this case, we do not address certain case law the Wilmets cite from other jurisdictions.

[9] The Wilmets make no argument that injuries to one participating in the practice or instruction of a recreational activity in an oversight role, but not himself or herself performing the activity (for example, a coach), would not be covered by the statute. In any event, we would find no merit in such an argument. *Cf. Meyer v. School Dist. of Colby*, 226 Wis. 2d 704, 713–14, 595 N.W.2d 339 (1999) (observing that, for purposes of the "team sports" exception to immunity, "nothing in the statute indicates that the various classes of people involved in an organized team sport activity, such as players, coaches, umpires, and spectators, are to be treated differently").

accomplishment of: oversee with the powers of direction and decision the implementation of one's own or another's intentions." *Supervise,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). And "supervision" means "the act, process, or occupation of supervising : direction, inspection, and critical evaluation: OVERSIGHT, SUPERINTENDENCE." *Supervision,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).

¶ 17. These definitions support applying recreational immunity to claims arising from the supervision of another's "recreational activity." Inherent in the concept of "supervision" is that the supervisor performs an active oversight function, including directing one or more individuals engaging in the activity. A supervisor has some degree of control over the circumstances under which activity takes place. Implicit in the Wilmets' argument is the notion that Carol could have directed her grandson not to dive, to dive in a particular way, or not to dive until conditions were appropriate (for example, by waiting until a lifeguard had been summoned).[10] Thus, the recreational activities of the person being supervised do become part and parcel of the supervisor's activities and, importantly for recreational immunity purposes, his or her reason for being present on the property. Hence, contrary to the Wilmets' argument, the recreational activity of the supervisee also becomes a recreational activity of the supervisor—even if the supervisor is not "recreating" in the same sense as his or her pupil.

¶ 18. "Supervision," in this sense, is akin to "practice," which, as applied to an outdoor activity for

---

[10] Indeed, Carol had already told her grandson not to dive until she could enter the premises.

one of the designated purposes, gives rise to recreational immunity. *See* WIS. STAT. § 895.52(1)(g). "Practice," as relevant here, means "to exercise oneself in for instruction or improvement or for the acquisition of discipline, proficiency, or dexterity." *Practice,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). An alternative, closely related definition of "practice" is: "to exercise (another) in something for similar purposes : TRAIN, DRILL (*practicing* the children in penmanship)." *Id.* (some punctuation altered). Thus, "practice," like "supervision," encompasses the concept that a person may actively and directly oversee the "practicing" by another and, in doing so, bear some manner of control over the conditions of the activity.

¶ 19. "Supervision" is even more similar to "instruction," another term specifically used by the legislature. "Instruction," as relevant here, means "the action, practice, or profession of one that instructs." *Instruction,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). "Instruction" is synonymous with teaching, and "instruct" connotes that the instructor is giving an order or command, or imparting authoritative knowledge. *Id.* Again, "instruction" is like in nature to "supervision."[11]

---

[11] The City does not directly tie its interpretation of the statute to the specifically enumerated terms "practice" and "instruction." Typically, we do not abandon our neutrality to develop arguments a party could have made. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶ 25. However, the operation of this rule here, in which the City effectively concedes the issue, would result in this court sanctioning an erroneous interpretation of the relevant statutory language. We are not bound by any party's interpretation of the law, nor are we obligated to accept a party's concession of law. *Cramer v. Eau Claire Cty.*, 2013 WI App 67, ¶ 11, 348 Wis. 2d 154, 833 N.W.2d 172. This rule against permitting the parties' litigation strat-

¶ 20. The Wilmets argue the legislature's decision to include "practice" and "instruction" in a recreational activity as subject to immunity supports their argument. They point to the absence of the word "supervise" in the statute as evidencing the legislature's intent not to immunize supervision of a recreational activity. *See C.A.K. v. State*, 154 Wis. 2d 612, 621, 453 N.W.2d 897 (1990) ("[E]numeration of specific alternatives in a statute is evidence of legislative intent that any alternative not specifically enumerated is to be excluded."). This argument, however, ignores the legislature's specific directive that circumstances and activities "substantially similar" to those enumerated in the statute also give rise to immunity. *See* 1983 Wis. Act 418, § 1. The Wilmets thus misapply this general principle of statutory construction in the specific context of the statute at issue in this case. In addition, the City's argument here is not like in kind to the State's argument that was rejected in *C.A.K.*, wherein the State argued that a procedure governing untimely delinquency petitions was not the exclusive procedure that could be used. *See C.A.K.*, 154 Wis. 2d at 623.

¶ 21. Our conclusion that a recreational activity includes "supervising" another person engaged in a recreational activity, under the definitions stated herein, is consistent with the statute's purpose. Although our supreme court has bemoaned "the seeming lack of basic underlying principles in the statute" regarding what is and is not a "recreational activity," *see Auman*, 248 Wis. 2d 548, ¶ 11, there is no doubt the statute's purpose is to encourage property owners to allow others' recreational use of their property,

egies to dictate the meaning of state law is particularly important when the parties' interpretation "ignores the statute's plain language." *Id.*

*Peterson*, 248 Wis. 2d 567, ¶ 22. Immunizing property owners from those engaged in a recreational activity while leaving such owners susceptible to liability for those actively supervising or instructing such an activity would run counter to the purpose of the legislation. Such an interpretation would also draw a seemingly illogical distinction for purposes of immunity and liability between those drawn to recreate on property opened up for that purpose versus those drawn to supervise or coach that same activity, on those same premises. *Cf. Meyer v. School Dist. of Colby*, 226 Wis. 2d 704, 713–14, 595 N.W.2d 339 (1999) (finding no support in the statute for an interpretation that distinguishes, for immunity purposes, between "the various classes of people involved in an organized team sport activity"). One is no less "engaged in a recreational activity," at least in a broad sense of engagement, when he or she is supervising—i.e., directing and controlling—someone physically involved in the activity. The Wilmets' construction also ignores the legislature's directive that we liberally construe the statute in favor of protecting property owners from liability. *See* 1983 Wis. Act 418, § 1.

¶ 22. Moreover, finding immunity under these circumstances is consistent with the case law regarding the activities of individuals other than those actively engaged in "recreating" at the time of an injury. As previously mentioned, in applying the organized team sport activity exception to recreational immunity statute, the *Meyer* court refused to immunize property owners against some individuals involved in team sport activities but not others: "the various classes of people involved in an organized team sport activity, such as players, coaches, umpires, and spectators," are all to be treated alike under the statute. *Meyer*, 226

Wis. 2d at 713. If a mere spectator who attends a recreational activity is engaged in a recreational activity under Wis. Stat. § 895.52, *see Roberts*, 367 Wis. 2d 386, ¶ 24, it would be nonsensical to hold that someone with authority to direct and control the recreational activity of another is not engaged in a "recreational activity."

¶ 23. The Wilmets also argue Carol was essentially acting as a "chaperone" similar to the injured party in *Rintelman*, in which case this court concluded recreational immunity did not apply. The plaintiff there was injured while walking between two lodges during a retreat (similar to a "school field trip") at a rural camping and retreat facility. *Rintelman*, 288 Wis. 2d 394, ¶¶ 2–4. The Wilmets contend the *Rintelman* court did not consider "supervising or chaperoning someone engaged in a recreational activity to be a recreational activity in itself."

¶ 24. We disagree with the Wilmets' reading of *Rintelman*. The *Rintelman* court did not squarely address the significance of the fact that the plaintiff was a "chaperone," nor did the court observe that the plaintiff was, at the time of her injury, "chaperoning" others who were themselves engaged in a recreational activity. Instead, the court focused on the nature of the plaintiff's walk, emphasizing it was not for exercise or to enjoy the scenery. *Id.*, ¶¶ 9–17. The *Rintelman* court also noted the paper-thin nature of the summary judgment record in that case; the only evidence was that the plaintiff was a volunteer chaperone and that she did not participate in any planned or unplanned recreational activities.[12] *Id.*, ¶ 17. Ultimately, *Rintel-*

[12] Again, the manner in which the court framed its observations suggests it was not required to consider whether such chaperoning qualified as a "recreational activity" under Wis. Stat. § 895.52.

*man* held that, on that record, the defendants asserting recreational immunity had failed to meet their burden of demonstrating the applicability of Wis. Stat. § 895.52. *Id.*, ¶¶ 17–18. We do not read *Rintelman* as resolving the issue presented by this case.[13]

¶ 25. In sum, we conclude that "supervising" other persons, who are themselves engaged in recreational activities, is a "recreational activity" within the meaning of Wis. Stat. § 895.52(1)(g). Such supervision involves actively overseeing or directing the performance of the recreational activity of another. Thus, "supervision" is akin to, and subsumed within, "practice" and "instruction" in a recreational activity, which the legislature specifically identified as giving rise to immunity. In addition, conferring recreational immunity for supervision is consistent with the legislature's purpose in enacting § 895.52. As the undisputed facts in this case establish that Carol Wilmet was supervising her grandson's recreational activity on the City's pool grounds at the time of her injury, the City is entitled to immunity under § 895.52 from her claims.

*By the Court.*—Order affirmed.

---

[13] The City "questions whether *Rintelman*'s analysis is a valid recitation of Wisconsin law in light of" *Linville v. City of Janesville*, 184 Wis. 2d 705, 516 N.W.2d 427 (1994). We do not perceive the purported conflict, and, in any event, only the Wisconsin Supreme Court has the authority to overrule a published decision of the Wisconsin Court of Appeals. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).