HRUZ, J.
*247 ¶1 Paula Langenhahn was injured when she tripped on a barricade positioned in an unmarked crosswalk while exiting Marathon Fun Days, a four-day community event held on park grounds in the Village of Marathon City. Paula and her *248 husband, Keith Langenhahn, appeal a summary judgment dismissing their personal injury claims against the event organizer, American Legion Post 469, and its insurer, West Bend Mutual Insurance Company. The Langenhahns argue summary judgment on recreational immunity grounds was improper because Post 469 was not a statutory "owner," in that it did not "occupy" the crosswalk where Paula was injured. They also argue the circuit court improperly applied recreational immunity because Paula was not engaged in a recreational activity at the time of her injury.
¶2 We conclude the circuit court properly granted Post 469's summary judgment motion. Case law establishes that the producer or organizer of a recreational event like Marathon Fun Days "occupies" the real property on which the event is held, and it is therefore considered an "owner" of the property for purposes of recreational immunity. Moreover, the undisputed evidence in this case establishes that Paula's injury occurred on real property dedicated to a recreational use. Finally, Paula was walking to exit the Marathon Fun Days event at the time of her injury, an act that itself constitutes a recreational activity because *213 it was "inextricably connected" to her attendance at that event. We affirm.
BACKGROUND
¶3 Post 469, a nonprofit organization, organizes and produces Marathon Fun Days in the Village of Marathon City. Marathon Fun Days is a community event that occurs annually during the Labor Day weekend. The event is held at Marathon City Veterans Park, which consists of approximately three square blocks and is bordered on the north by Third Street, on the south by Fourth Street, on the west by Market *249 Street, and on the east by an imaginary extension of East Street, which terminates on both sides of the park.[1] Chestnut Street runs north and south and intersects Third and Fourth Streets, bisecting the park area. The Village owns Veterans Park as well as the surrounding public streets.
¶4 On September 3, 2011, the Langenhahns attended an informal class reunion at Marathon Fun Days. Upon arriving at the area, Keith parked their car to the south of the park area, near the intersection of Chestnut Street and Fourth Street, and then they walked across Chestnut Street and Fourth Street to get to the park grounds. The Langenhahns attended Marathon Fun Days for a few hours, during which time they socialized with Keith's former classmates. Alcoholic and other beverages were being served at the event; Keith consumed one beer while attending the reunion.
¶5 The Langenhahns left Veterans Park that night through an opening in the fence surrounding the park. They walked across Fourth Street, then east on the sidewalk opposite Veterans Park until they encountered Chestnut Street. Keith told Paula he would walk ahead and unlock the car, and he proceeded to walk slightly ahead of Paula. As Paula stepped off the curb behind him and began to cross Chestnut Street, she tripped over the foot of a metal barricade that was protruding into the crosswalk.[2] Paula severely injured her elbow.
*250 ¶6 The barricades were present in the intersection because, each year, Post 469 requests that the Village block off Fourth Street to vehicular traffic between East Street and Washington Street. Post 469 officials were aware that people would park to the south of Fourth Street and believed allowing vehicular traffic on Fourth Street presented a danger to children and other pedestrians. Post 469 did not locate food stands, rides, or other structures associated with Marathon Fun Days within Fourth Street, but it did use Fourth Street for a children's parade. In addition, access to Fourth Street is permitted for emergency vehicles and handicap parking.
¶7 Rent-A-Flash Company provided Post 469 with the barricades for the event *214 free of charge. Donald Southworth, the head of Post 469's executive committee at the time, told Rent-A-Flash where to deliver the barricades for storage until they were ready for deployment. The appellate record is unclear whether the Village, through its police department, or Post 469 ultimately placed the barricades in the roads.[3] However, *251 it is undisputed that the barricades-including the barricade Paula tripped on-were used in connection with the Marathon Fun Days event.
¶8 The Langenhahns filed a negligence action against Post 469.[4] Post 469 subsequently filed a summary judgment motion, asserting the recreational immunity statute, WIS. STAT . § 895.52 (2015-16),[5] barred the Langenhahns' claims. The circuit court concluded that recreational immunity applied, rejecting the Langenhahns' arguments that Post 469 was not a statutory "owner" of the property on which Paula was injured and that Paula was not engaged in a recreational activity at the time she tripped. The Langenhahns now appeal.
DISCUSSION
¶9 We review a grant of summary judgment de novo. Tews v. NHI, LLC , 2010 WI 137, ¶40, 330 Wis.2d 389, 793 N.W.2d 860. The summary judgment methodology is well established. Id. , ¶41. Summary judgment must be granted when there is no genuine *252 dispute as to any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). "The purpose of the summary judgment procedure is to avoid trials when there is nothing to try." Tews , 330 Wis.2d 389, ¶42, 793 N.W.2d 860.
¶10 The circuit court's grant of summary judgment was based on its conclusion that Post 469 was entitled to recreational immunity. The recreational immunity statute, WIS. STAT. § 895.52, reflects a legislative choice to "expand[ ] liability protection for landowners who open their private property for public recreational use." Lang v. Lions Club of Cudahy Wis., Inc. , 2018 WI App 69, ¶15, 384 Wis.2d 520, 920 N.W.2d 329 (citing Westmas v. Creekside Tree Serv., Inc. , 2018 WI 12, ¶21, 379 Wis.2d 471, 907 N.W.2d 68 ). The law is intended to address the "continual shrinkage of the public's access to recreational land in the ever more populated modern world." Hall v. Turtle Lake Lions Club , 146 Wis.2d 486, 489, 431 N.W.2d 696 (Ct. App. 1988).
¶11 The statute accomplishes this goal by "removing a property user's potential cause of action against a property owner's alleged negligence." Kautz ex rel. Kautz v. Ozaukee Cty. Agri. Soc. , 2004 WI App 203, ¶9, 276 Wis.2d 833, 688 N.W.2d 771. Specifically, *215 the recreational immunity statute provides:
(2) NO DUTY; IMMUNITY FROM LIABILITY . (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
1. A duty to keep the property safe for recreational activities.
*253 2. A duty to inspect the property, except as provided under s. 23.115(2).
3. A duty to give warning of an unsafe condition, use or activity on the property.
(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property ....
WIS. STAT . § 895.52(2).
¶12 The statute contains a number of defined terms, including the terms "owner" and "recreational activity." See WIS. STAT . § 895.52(1)(d), (1)(g). The Langenhahns argue the circuit court incorrectly concluded that the circumstances of this case satisfy those definitions. Specifically, the Langenhahns argue that Post 469 was not a statutory "owner" of the property on which Paula was injured and that Paula was not engaged in a "recreational activity" when she fell.
¶13 These arguments require that we interpret WIS. STAT . § 895.52 and apply it to the facts of this case. Statutory interpretation and application are questions of law that we review independently of the circuit court. Westmas , 379 Wis.2d 471, ¶17, 907 N.W.2d 68. We begin with the language of the statute, which we apply if it exhibits a plain, clear statutory meaning. Id. , ¶18. We read statutory provisions in the context in which they are used; not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd results. Id. , ¶19. In all events, "we favor a construction that fulfills the purpose of the statute over one that defeats statutory purpose." Id. (citing *254 County of Dane v. LIRC , 2009 WI 9, ¶34, 315 Wis.2d 293, 759 N.W.2d 571 ). To that end, we are to interpret the protections of § 895.52"expansively," id. , ¶22, consistent with the legislative directive to liberally construe recreational immunity in favor of property owners, see 1983 Wis. Act 418, § 1.
I. Post 469 was a statutory "owner" of the property on which Paula was injured.
¶14 Recreational immunity applies only to an "owner" of the relevant property and to the owner's officers, employees or agents. See WIS. STAT. § 895.52(2)(a), (2)(b). As relevant to this appeal, an owner is defined as "[a] person, including a governmental body or nonprofit organization, that owns, leases or occupies property." Sec. 895.52(1)(d)1. It is undisputed that Post 469 did not own or lease Veterans Park or the surrounding area. Accordingly, Post 469 can only prevail on recreational immunity grounds by demonstrating it occupied the relevant real property. See Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc. , 2005 WI App 246, ¶18, 288 Wis.2d 394, 707 N.W.2d 897 (observing the proponents of recreational immunity have the burden of proving the applicability of § 895.52 ).
¶15 In Hall , we adopted a definition of "occupy" that focuses on possession of the real property:
[O]ccupant include[s] persons who, while not owners or tenants, have the actual use of land. ... While "occupant" includes *216 [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.
*255 Hall , 146 Wis.2d at 491, 431 N.W.2d 696 (quoting Smith v. Sno Eagles Snowmobile Club, Inc. , 625 F.Supp. 1579, 1582 (E.D. Wis. 1986) (alterations in Hall ) ). Despite the "transient" nature of the possessory interest, our supreme court has subsequently endorsed the view that occupancy requires possession that exhibits "a degree of permanence, as opposed to mere use." Roberts v. T.H.E. Ins. Co. , 2016 WI 20, ¶34, 367 Wis.2d 386, 879 N.W.2d 492 (quoting Doane v. Helenville Mut. Ins. Co. , 216 Wis.2d 345, 354, 575 N.W.2d 734 (Ct. App. 1998) ).
¶16 Post 469's occupation of Veterans Park and the surrounding areas to host Marathon Fun Days plainly satisfied these criteria. "Prior cases interpreting Wisconsin's recreational immunity law have concluded that the producer of a fair or event 'occupied' property." Roberts , 367 Wis.2d 386, ¶29, 879 N.W.2d 492. Thus, a fraternal organization that produced a "hometown fair" within a village park was deemed to "occupy" that property. See Hall , 146 Wis.2d at 490, 431 N.W.2d 696. Similarly, in Lee v. Elk Rod & Gun Club, Inc. , 164 Wis.2d 103, 473 N.W.2d 581 (Ct. App. 1991), we concluded that a hunting and fishing club, "as an occupant of the city park land, is treated as a landowner for purposes of recreational immunity." Id. , at 107, 473 N.W.2d 581. Roberts relied on these authorities in reinforcing that an event sponsor or organizer who is responsible for opening up the land to the public is to be treated differently than a third party that has no such responsibility. See Roberts , 367 Wis.2d 386, ¶¶33, 37, 879 N.W.2d 492. The sponsor or organizer occupies the property, while the third party merely uses it.
¶17 The Langenhahns place substantial weight on Roberts in claiming that Post 469 should not benefit from recreational immunity. Roberts involved a lawsuit *256 against the owner and operator of a company that offered hot air balloon rides at a charity event. Id. , ¶¶5-6. A recreational club owned the shooting range at which the event was held, and a special needs organization was the event sponsor. Id. , ¶5. The court distinguished the hot air balloon company from the producer or sponsor of a recreational event, concluding that the legislative policy underlying WIS. STAT. § 895.52 would not be promoted by deeming a party unassociated with the opening of the land for recreational use a statutory "occupier." Roberts , 367 Wis.2d 386, ¶¶36-41, 879 N.W.2d 492.
¶18 Here, the Langenhahns argue that Post 469 is in a similar position to the hot air balloon company in Roberts . However, in doing so, they focus narrowly on the specific crosswalk where Paula was injured, asserting that Post 469 could not have opened the crosswalk to the public because it was already open for all pedestrians to use throughout the Marathon Fun Days event. Their narrow focus on the crosswalk-which we will address momentarily-fails to account for Post 469's status as the organizer and producer of Marathon Fun Days, a status that materially distinguishes it from the hot air balloon company in Roberts . Roberts established that an event organizer "occupies" the relevant property regardless of whether such a status might be consistent with the statute's philosophical underpinnings in a given *217 case.[6] ibr.US_Case_Law.Schema.Case_Body:v1">See id. , ¶¶33, 37. And as Roberts and the cases cited therein make clear, the producer of a *257 community event like Marathon Fun Days "occupies" the real property with sufficient permanence to qualify for immunity.
¶19 The Langenhahns' argument that immunizing Post 469 does not advance the legislature's policy goals is, in fact, merely a variation of a different argument of theirs-namely, that the specific crosswalk at issue was not sufficiently withdrawn from public use to warrant immunity. In the Langenhahns' view, to be eligible for recreational immunity, Post 469 must have completely withdrawn the crosswalk from general public use and dedicated it solely to a recreational activity. As authority, the Langenhahns primarily rely on Kostroski v. County of Marathon , 158 Wis.2d 201, 462 N.W.2d 542 (Ct. App. 1990).
¶20 In Kostroski , a party injured on a portable wooden sidewalk in a county park argued that an earlier case, Bystery v. Village of Sauk City , 146 Wis.2d 247, 430 N.W.2d 611 (Ct. App. 1988), carved out an exception to recreational immunity when the injury occurred on a municipal sidewalk. Kostroski , 158 Wis.2d at 203-04, 462 N.W.2d 542. Indeed, the Bystery court had declared that WIS. STAT. § 895.52 conflicted with the then-existent WIS. STAT. § 81.15 (1987-88), which permitted a person injured by "the insufficiency or want of repairs" to a highway or public sidewalk to recover damages from the municipality. Bystery , 146 Wis.2d at 251, 430 N.W.2d 611. In an attempt to harmonize these statutes, Bystery held that a municipality is immune from liability for negligent maintenance of a highway or sidewalk "only when the municipality has withdrawn the highway or sidewalk from transportation uses, in whole or in part, has devoted the highway or sidewalk *258 to recreational activities as defined in sec. 895.52(1)(g), and the claimed damages result from a recreational activity." Bystery , 146 Wis.2d at 251-52, 430 N.W.2d 611.
¶21 The Kostroski court, purporting to apply Bystery , concluded that recreational immunity applied to bar the plaintiff's claim. In asserting that recreational immunity applies only if a road or sidewalk is dedicated exclusively to recreational activities, the Langenhahns rely on the following paragraph:
The portable sidewalk, whose only purpose was to provide access over a racetrack and connect two areas of the county park, was sufficiently withdrawn or withheld from transportation uses and devoted to recreational activities so as to comply with the test set forth in Bystery . The location of this sidewalk within the boundaries of a park is not dispositive. Were this sidewalk available for purposes of general transportation by the public, the mere fact that the injured user was engaged in recreational activity within the park would not provide immunity. The dispositive feature of this sidewalk is its solitary purpose to serve only those attempting to enter or leave the ball park otherwise surrounded and enclosed by the racetrack.
Kostroski , 158 Wis.2d at 204-05, 462 N.W.2d 542.
¶22 There are two problems with the Langenhahns' reliance on Kostroski , and *218 we conclude it cannot be read for the proposition that complete withdrawal and devotion to recreational activities is necessary. First, there is no longer a statutory conflict; WIS. STAT . § 81.15 (1987-88), and its provisions relating to municipal liability for negligent highway or sidewalk maintenance have been repealed. See 2003 Wis. Act 213, § 136 (renumbering the statute); 2011 Wis. Act. 132 (repealing liability for negligent maintenance). Because the conflict *259 addressed in Bystery (and, consequently, Kostroski ) no longer exists, the precedential vitality of the court's resolution of that conflict is unclear.[7]
¶23 The larger problem for the Langenhahns is that even if Kostroski remains good law, it does not require that a sidewalk (or crosswalk) be overtly dedicated entirely to recreational purposes. Bystery held that it is sufficient that the municipality withdraw the highway or sidewalk from transportation uses "in whole or in part" and devote the area to a recreational activity.[8] The Kostroski court merely held that a sidewalk that is entirely associated with recreational activities passes muster under the Bystery test. Regardless of the court's statements about other possible scenarios and uses, it was not confronted with a situation in which the area was being used for recreational purposes but was also available for use by the general public.
¶24 The better analogy is to Lasky v. City of Stevens Point , 220 Wis.2d 1, 582 N.W.2d 64 (Ct. App. 1998), in which we applied the recreational immunity *260 statute to bar personal injury claims arising out of a fall on a wooden bridge in a city park. The injury occurred on the Riverfront Trail, which was part of the Green Circle Trail, a twenty-four-mile cycling and hiking trail that included a combination of city streets, sidewalks, paths and trails. Id. , at 4, 582 N.W.2d 64. The accident happened in winter, when the Riverfront Trail was closed to motor vehicles but was still used by pedestrians, skaters and bicyclists. Id. Applying Bystery and Kostroski , we concluded the fact that the trail was closed to motor vehicle traffic in the winter and "unavailable for general transportation" satisfied the "withdrawal and devotion" requirement. Lasky , 220 Wis.2d at 12-13, 582 N.W.2d 64.
¶25 Here, it is beyond dispute that the area of Fourth Street around Marathon Fun Days was withdrawn from general vehicular transportation uses. The area was barricaded to prevent motor vehicle use, even if certain motorists (i.e., emergency vehicles and vehicles using handicap parking) were allowed to operate within that area. As a matter of law, this constituted a sufficient withdrawal from general transportation purposes and devotion to recreational activities so as to satisfy the Bystery requirements.[9]
*219 *261 ¶26 The Langenhahns object that Paula was injured in a crosswalk for Chestnut Street, not a crosswalk traversing Fourth Street. They assert the Marathon Fun Days grounds were "limited to the borders of ... Veterans Park and potentially 4th Street" and did not include the Chestnut Street crosswalk "located several feet south" of Fourth Street. They also argue that, at a minimum, there is a genuine issue of material fact regarding whether Paula's fall occurred in an area "occupied" by Post 469.[10]
¶27 Whatever else may be said about the Chestnut Street crosswalk, it is clear that Post 469 occupied at least the portion of it that included the barricade on which Paula tripped. As the circuit court astutely observed, "it would be incongruous to say that [Post 469] was responsible for the presence of the barricades but that it was not occupying the property where they were situated." The boundary of the area withdrawn for general transportation purposes, as a matter of law, included the barricades that prevented motor vehicle access to Fourth Street. Thus, we reject the argument that Post 469 did not "occupy" the Chestnut Street crosswalk. The presence of the barricades *262 plainly evidences Post 469's occupancy of it, and no reasonable fact finder could conclude otherwise.
II. Paula was participating in a recreational activity at the time of her injury.
¶28 The recreational immunity statute requires that the injured party had been engaging in a "recreational activity." See WIS. STAT . § 895.52(2). The statute defines that phrase in three ways. See Minnesota Fire & Cas. Ins. Co. v. Paper Recycling of La Crosse , 2001 WI 64, ¶10, 244 Wis.2d 290, 627 N.W.2d 527. First, "recreational activity" is broadly defined to include "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity." Sec. 895.52(1)(g). Second, the definition identifies more than thirty activities specifically denominated as recreational, including "picnicking." Id. Third, the statute includes another broad definition, directing that a recreational activity can be "any other outdoor sport, game or educational activity." Id.
¶29 The parties generally agree that Paula was walking at the time she was injured. As we explained in Wilmet v. Liberty Mutual Insurance Co. , 2017 WI App 16, 374 Wis.2d 413, 893 N.W.2d 251, WIS. STAT . § 895.52"does not specifically identify walking as a recreational activity, but depending on the circumstances, it may qualify as such." Id. , ¶11. A walk that is "inextricably connected" to an activity that would otherwise qualify the owner for immunity *220 under the statute is itself a recreational activity. Id. (citing Urban v. Grasser , 2001 WI 63, ¶¶20-21, 243 Wis.2d 673, 627 N.W.2d 511 ). *263 ¶30 The parties dispute the activity to which Paula's walking should be attributed. The Langenhahns argue Paula's walk was "inextricably connected to attending a class reunion" and that attending a class reunion is not a recreational activity because it is not inherently an outdoor activity and is not undertaken for the purpose of exercise, relaxation or pleasure. Post 469, on the other hand, argues the circumstances of this case fall within the definition of a "recreational activity" because Paula's attendance at the Marathon Fun Days event was the equivalent of "picnicking," a specifically enumerated activity. As a result, Post 469 asserts Paula's conduct plainly fell within the scope of immunity conferred by WIS. STAT . § 895.52. See WEA Prop. & Cas. Ins. Co. v. Krisik , 2013 WI App 139, ¶14, 352 Wis.2d 73, 841 N.W.2d 290 (holding that if a person is engaged in a specifically enumerated activity, it is unnecessary to consider whether the activity was undertaken for a permissible purpose).
¶31 We agree with Post 469 that the Langenhahns' formulation of the activity with which Paula's walk was associated is too narrow. "Each recreational immunity case 'poses an intensely fact-driven inquiry.' " Wilmet , 374 Wis.2d 413, ¶14, 893 N.W.2d 251 (quoting Auman ex rel. Auman v. School Dist. of Stanley-Boyd , 2001 WI 125, ¶12, 248 Wis.2d 548, 635 N.W.2d 762 ). We must examine all the circumstances surrounding the activity, keeping in mind the legislative purpose of the recreational immunity statute. Urban , 243 Wis.2d 673, ¶13, 627 N.W.2d 511. Thus, we must examine the broader context of the Langenhahns' presence on property that Post 469 occupied, as opposed to focusing narrowly on their purpose of attending an informal class reunion.
*264 ¶32 Indeed, the property user's intent is but one of several factors to consider in determining whether an activity is recreational in nature.
We apply a multi-factor test to ascertain whether a particular activity is 'substantially similar' to those enumerated in the statute, including: (1) the activity's intrinsic nature; (2) the purpose of the activity; (3) the activity's consequences; (4) the property user's intent and reason for being on the property; (5) the nature of the property; and (6) the property owner's intent. The focus of the inquiry is whether, under the totality of the circumstances, a reasonable person would understand the injured person to have entered the property to engage in a recreational activity.
Wilmet , 374 Wis.2d 413, ¶14, 893 N.W.2d 251 (citations omitted).
¶33 Here, the Langenhahns were attending an informal class reunion held on the grounds of, and during, the Marathon Fun Days event. The Langenhahns present no basis for distinguishing their attendance at the class reunion from their presence at Marathon Fun Days. They were engaged in socializing with friends and Keith drank an alcoholic beverage while in the park. There were apparently food stands and amusement rides located on the grounds for attendees. The event appears similar to the fair we deemed a "recreational activity" in Hall . See Hall , 146 Wis.2d at 488, 431 N.W.2d 696.
¶34 More recent case law also supports our conclusion that attendance at the Marathon Fun Days event-even for an informal class reunion-constitutes a "recreational activity." In *265 Carini v. ProHealth Care, Inc. , 2015 WI App 61, 364 Wis.2d 658, 869 N.W.2d 515, we considered whether walking to an employer-sponsored *221 picnic at the Milwaukee County Zoo constituted participation in a recreational activity. Id. , ¶¶3, 11-12. The event included food and beverage tents, public seating, a band, and toilet facilities. Id. , ¶3. The injured employee focused on the fact that she was walking to the event at the time of her injury, and she did not dispute that she would have been engaged in a recreational activity once she arrived. Id. , ¶11. Nonetheless, we independently observed that the circumstances were akin to "picnicking," a specifically enumerated recreational activity. Id.
¶35 The Langenhahns' walking to exit Marathon Fun Days was inextricably connected to their attendance at the event, and it was therefore a recreational activity qualifying Post 469 for immunity. "Our case law makes clear that the act of walking to or from an immune activity constitutes a recreational activity." Id. , ¶12. The Langenhahns were on a course to their car to leave the event at the time Paula was injured, and they were therefore engaged in a "recreational activity." For this reason, it is immaterial whether Paula was doing things like socializing or eating at the time of her fall. See id.
CONCLUSION
¶36 We conclude the circuit court properly granted Post 469's summary judgment motion. As a producer or organizer of the Marathon Fun Days event, Post 469 was an "owner" under WIS. STAT . § 895.52. Paula was engaged in a recreational activity at the time of her injury, which occurred on real property occupied by Post 469. The court correctly *266 concluded recreational immunity applied under these circumstances, and we affirm the grant of summary judgment.
By the Court. -Judgment affirmed.

The total area described by the documents in the appellate record consists of approximately four blocks. However, it appears the westernmost "block," which is bordered by Market Street on the west and Washington Street on the east, is occupied by several buildings and parking lots. It is not clear whether these structures were in use as part of the Marathon Fun Days event.

The barricades were known as "Type 3" barricades, which are approximately five feet tall and four feet wide. The barricades have striped slats hanging horizontally on a metal frame and are supported on each end by two "legs," each of which has two "feet" that support the barricade on the ground. One side of the barricade has feet that measure 19.5 inches in length, while the other side has longer feet measuring 37 inches in length. Keith testified the longer feet were positioned within the crosswalk on Chestnut Street, pointing south. The crosswalk was not formally identified by any markings.

The deposition testimony was consistent that Post 469 would instruct the Village as to which roads it wanted blocked off. However, there was disagreement regarding who was ultimately responsible for the barricades' physical placement. Southworth testified that decisions about where and how to place the barricades (as well as their physical deployment in the chosen locations) were handled by the Village police department. Conversely, others (including the Village police chief) testified that Post 469 was responsible for deploying the barricades prior to the start of Marathon Fun Days. We do not regard the identity of the person or persons who deployed the barricades as a material fact in this case.

The Langenhahns filed an amended complaint adding the Village of Marathon City and its insurer as defendants. Those parties were subsequently dismissed by stipulation.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. Although the recreational immunity statute has been amended several times since Paula's injury, none of the amendments are relevant to this appeal, and we therefore use the current version of the statute.

The Langenhahns do not develop any argument that Post 469 is not entitled to immunity because Marathon Fun Days primarily took place in a public park. In any event, prior cases establish that an event organizer receives the benefit of recreational immunity even if the event takes place on public lands. See Lee v. Elk Rod & Gun Club, Inc. , 164 Wis.2d 103, 107, 473 N.W.2d 581 (Ct. App. 1991) ; Hall v. Turtle Lake Lions Club , 146 Wis.2d 486, 490, 431 N.W.2d 696 (Ct. App. 1988).

We recognize that at the time of Paula's injury in 2011, the highway liability statute remained in effect. See Wis. Stat. § 893.83 (2009-10). Thus, we do not rely solely on the absence of a statutory conflict in resolving whether Post 469 "occupied" the crosswalk in which Paula was injured.

We subsequently recognized that Bystery 's statement about devoting the street or sidewalk to recreational activities, see Bystery v. Village of Sauk City , 146 Wis.2d 247, 251-52, 430 N.W.2d 611 (Ct. App. 1988), was "unnecessary to the resolution of the appeal" because it was undisputed that the Village of Sauk City had failed on the first criterion: it had not withdrawn the sidewalk from public transportation use. See Verdoljak v. Mosinee Paper Corp. , 192 Wis.2d 235, 248, 531 N.W.2d 341 (Ct. App. 1995), aff'd , 200 Wis.2d 624, 547 N.W.2d 602 (1996).

The Langenhahns do not explain, even in general terms, how a requirement of complete devotion to recreational activities would operate in practice. They do not, for example, argue the Village or Post 469 was required to post signs that the area was available only for recreational pedestrian activity, or that it was required to direct pedestrians not attending Marathon Fun Days away from the intersection. Neither did the court in Kostroski explain how such a requirement would work, lending further support to our conclusion that the Langenhahns read that decision too broadly. See Kostroski v. County of Marathon , 158 Wis.2d 201, 204, 462 N.W.2d 542 (Ct. App. 1990).

The Langenhahns appear to have forfeited any argument that reversal is warranted because a genuine issue of material fact exists as to whether Post 469 occupied the crosswalk in which Paula was injured. They argued in their brief opposing summary judgment that Paula was undisputedly not injured on occupied property, asserting that opposing counsel had effectively conceded-by his manner of framing deposition questions posed to Paula-that the accident occurred on non-occupied property. The Langenhahns did not argue there was a factual dispute that made summary judgment improper, and we usually do not consider arguments raised for the first time on appeal. See State v. Bodoh , 226 Wis.2d 718, 737, 595 N.W.2d 330 (1999).